In the

# United States Court of Appeals
## For the Seventh Circuit

——————

No. 07-3154

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GREGORY BLUM,

*Defendant-Appellant.*

——————

Appeal from the United States District Court
for the Western District of Wisconsin
No. 07-CR-27—**John C. Shabaz**, *Judge.*

——————

ARGUED MAY 12, 2008—DECIDED JULY 15, 2008

——————

Before ROVNER, EVANS, and WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge.* On March 8, 2007, a grand jury returned an indictment charging Gregory Blum with two counts of manufacturing child pornography in violation of 18 U.S.C. § 2251(a). Blum filed a motion to dismiss the indictment arguing that § 2251(a) was unconstitutional as applied to him, and the district court denied that motion. Blum then filed a conditional guilty plea to both counts, preserving his right to appeal the denial of his motion to dismiss. The district court sentenced him to 60 years in prison, and Blum appeals, challenging both the denial of the motion to dismiss and the sentence.

The charges in this case stemmed from a search warrant executed at Blum's home, which yielded a Panasonic mini-DV tape. That videotape recorded various segments of Blum committing child sexual assault over a two-day period of time in July 2006. Blum subsequently admitted that he was the adult on the tape, and that the child was approximately three years old. He also admitted to the sexual assault of three separate girls between the ages of 3 and 5 during the summer of 2006, one of whom was the one on the tape. Blum believed that it was "probably" the same child depicted on the tape in each of the two days.

Blum first argues that 18 U.S.C. § 2251(a) violates the Commerce Clause of the United States Constitution as applied to the facts of his case, because the pornography was manufactured at his home in Wisconsin, for his private viewing and possession, and therefore was unrelated to the stream of commerce. The only movement in interstate commerce that is alleged is that the mini-DV tapes were manufactured outside the state of Wisconsin. Blum maintains that the federal government cannot prosecute him for an offense that had no other connection to interstate commerce.

We upheld an analogous provision, 18 U.S.C. § 2252(a)(4)(B), which prohibited possession of child pornography, against a similar Commerce Clause challenge. *United States v. Angle*, 234 F.3d 326 (7th Cir. 2000). In *Angle*, we held that Congress could properly criminalize even intrastate possession of child pornography as necessary to close a loophole that was undermining its ability to regulate interstate child pornography. *Id.* at 338. That reasoning is equally applicable to the intrastate production of child pornography. Moreover, the Supreme Court in *Gonzales v. Raich*, 545 U.S. 1 (2005) adopted a

similar approach which reaffirms the soundness of our decision in *Angle.*

In *Raich*, the Supreme Court considered a Commerce Clause challenge to the use of the federal Controlled Substances Act (CSA) to criminalize the purely intrastate manufacture and possession of marijuana for medical purposes, which was allowed by state law. The Court began by noting that there are three general categories of regulation available to Congress under its commerce power: first, "Congress can regulate the channels of interstate commerce"; second, "Congress has authority to regulate and protect the instrumentalities of interstate commerce, and persons or things in interstate commerce"; and finally, "Congress has the power to regulate activities that substantially affect interstate commerce." *Id.* at 16-17. The third category was implicated in *Raich* as well as in the present case.

In determining that the federal government could criminalize even the purely intrastate manufacture and possession of marijuana that was allowed by state law for medical purposes, the Court emphasized that Congress has the power under the Commerce Clause "to regulate purely local activities that are part of an economic "class of activities" that have a substantial effect on interstate commerce." *Id.* at 17. Moreover, the Court made it clear that the substantiality of an individual's own activities was not the relevant focus. Instead, the Court emphasized its earlier holdings that the *de minimis* character of an individual's actions under a statute is of no consequence because the proper focus is on the individual's contribution taken together with that of many others similarly situated. *Id.* Nor was it dispositive that the marijuana growers were not engaged in commercial

activity, but were merely growing it for their own, medically-approved use. The Court noted its holding in *Wickard v. Filburn*, 317 U.S. 111 (1942), which established that "Congress can regulate purely intrastate activity that is not itself "commercial," in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity." *Id.* at 18.

Accordingly, it was not dispositive that the quantity of marijuana grown by an individual was not significant, nor that it was not being sold. Instead, the Court considered whether the regulation of the intrastate production and possession of marijuana was necessary to effectively regulate the interstate market. The Court stressed the narrow role for the courts in assessing such challenges. First, the Court held that the absence of particularized findings by Congress that the intrastate cultivation and possession of marijuana for medical purposes would substantially affect the interstate market, was not dispositive. Such particularized findings will be considered by courts, but are not required absent a special concern such as the protection of freedom of speech. In addition, the Court emphasized that a court's task in assessing the scope of Congress' authority under the Commerce Clause is a modest one: a court "need not determine whether respondents' activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding." *Id.* at 22.

The Court held that such a rational basis existed in *Raich* because the high demand for marijuana in the interstate market created a likelihood that marijuana grown for local consumption would be drawn into the interstate

market. *Id.* at 19. Moreover, the exemption of intrastate marijuana would impair the ability of Congress to enforce its interstate prohibition given the difficulty in distinguishing between marijuana cultivated locally and that grown elsewhere. *Id.* at 22.

Parallel concerns are present in the regulation of the interstate child pornography market, and accordingly since the *Raich* decision many circuits have rejected a similar Commerce Clause challenge to that raised by Blum. In fact, the Eleventh Circuit pre-*Raich* had upheld a Commerce Clause challenge to a comparable provision, 18 U.S.C. § 2252A(a)(5)(B) of the Child Pornography Prevention Act (CPPA), but reversed its conclusion when the Supreme Court remanded the case for reconsideration in light of *Raich*. *United States v. Maxwell*, 446 F.3d 1210 (11th Cir. 2006). On remand, the Eleventh Circuit found the *Raich* analysis dispositive, stating that "[i]ndeed, much of the Court's analysis could serve as an opinion in this case by simply replacing marijuana and the CSA with child pornography and the CPPA." *Id.* at 1216. As that court and others noted, the CPPA is part of a comprehensive regulatory scheme designed to eliminate the market for child pornography similar to the regulation of controlled substances by the CSA. Moreover, Congress in enacting the statute recognized the danger posed by any child pornography regardless of origin, noting in essence that child pornography begets more child pornography, and therefore supporting the conclusion that the failure to regulate that class of activity would undermine the regulation of the interstate market in child pornography:

> [T]he existence of and traffic in child pornographic images . . . inflames the desires of child molesters, pedophiles, and child pornographers who prey on

children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials; the sexualization and eroticization of minors through any form of child pornographic images has a deleterious effect on all children by encouraging a societal perception of children as sexual objects and leading to further sexual abuse and exploitation of them; and . . . prohibiting the possession and viewing of child pornography will encourage the possessors of such material to rid themselves of or destroy the material, thereby helping to protect the victims of child pornography and to eliminate the market for the sexual exploitative use of children; and . . . the elimination of child pornography and the protection of children from sexual exploitation provide a compelling governmental interest for prohibiting the production, distribution, possession, sale, or viewing of visual depictions of children engaging in sexually explicit conduct . . . .

Pub.L. No. 104-208, § 121, 1996 HR 3610, 110 Stat. at 3009-27. As was the case in *Raich*, the high demand for child pornography in the interstate market presented the real danger that purely-intrastate child pornography would find its way to that market. Similarly, the same difficulty in distinguishing between locally-produced marijuana and interstate marijuana for enforcement purposes is problematic with respect to child pornography as well. Given those substantial concerns, and additionally considering the Congressional determination that the manufacture and possession of any child pornography itself feeds the market and increases demand for it, we hold that

Congress rationally could conclude that Blum's actions, taken in aggregation with others engaged in similar activities, substantially affects interstate commerce. We therefore join our sister circuits in rejecting the Commerce Clause challenge to the application of the statute to intrastate child pornography. *See e.g. United States v. Sullivan*, 451 F.3d 884, 891 (D.C. Cir. 2006) (Congress could proscribe intrastate possession of child pornography because it had a rational basis to conclude that the failure to regulate such possession would leave a significant gap in its comprehensive efforts to eliminate the market for sexually exploitative uses of children); *United States v. Forrest*, 429 F.3d 73, 78 (4th Cir. 2005) (characterizing case as strikingly similar to *Raich*, court rejected Commerce Clause challenge, holding that Congress could rationally fear that homemade child pornography would find its way into interstate commerce); *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006) (child pornography statutes are part of comprehensive legislation to regulate the interstate market in a fungible commodity and Congress has a rational basis for believing that locally-produced child pornography can feed the national market and stimulate demand); *United States v. Grimmett*, 439 F.3d 1263, 1273 (10th Cir. 2006) (it is irrelevant that the defendant neither shipped the materials interstate nor intended to benefit commercially from his conduct; Congress' decision to reach such conduct is a rational determination that such local activities are an essential part of the interstate market for child pornography); *United States v. Smith*, 459 F.3d 1276, 1285 (11th Cir. 2006) (conviction for intrastate production and possession of child pornography constitutional because Congress could rationally conclude that the inability to regulate purely intrastate possession and production would, in

the aggregate, undermine its ability to regulate the inter-state market for child pornography).

Blum has a remaining challenge, however, which is to the application of two enhancements at Blum's sentencing, which he contends constitutes impermissible double-counting. It is impermissible for a district court to impose two or more upward adjustments within the same guidelines range when both are premised on the same conduct. *United States v. Schmeilski*, 408 F.3d 917, 919 (7th Cir. 2005). The presence of some factual overlap is not sufficient to trigger the prohibition on double counting, however, where the two enhancements address distinct aspects of a defendant's conduct. *Id.* Pursuant to U.S.S.G. § 3D1.2, two offense levels were added to Blum's base offense level because he was convicted on two separate counts of child pornography. In addition, he received a five-level enhancement under U.S.S.G. § 4B1.5(b) because he "engaged in a pattern of activity involving prohibited sexual conduct." Blum argues that both enhancements are premised on the same conduct—the acts of creating child pornography on the two separate days. Blum argues that the same child was the victim in each of the counts, and therefore that the district court improperly concluded that there were multiple victims in applying the pattern enhancement. That claim fails, however, because the pattern enhancement applies whenever a defendant convicted of manufacturing child pornography under 18 U.S.C. § 2251 engaged in a pattern of activity involving prohibited sexual conduct. "Prohibited sexual conduct" is defined as: (i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography; or (iii) trafficking in child pornography only if, prior to the commission of the instant of-

fense of conviction, the defendant sustained a felony conviction for that trafficking in child pornography. U.S.S.G. § 4B1.5(b), Application Note 4(A). The definition, therefore, is not limited to actions involving child pornography, but includes conduct that constitutes an offense as described in 18 U.S.C. § 2426(b)(1)(A) or (B). Blum admitted to the sexual assault of three young girls in the summer of 2006, which is an offense described in 18 U.S.C. § 2426(b)(1)(A) or (B) which incorporates by reference conduct described in 18 U.S.C. § 2241 (sexual abuse of a minor). Blum's argument that a conviction for that sexual abuse is required ignores the language of Application Note 4(A), which uses 18 U.S.C. § 2426(b)(1) as descriptive of conduct that is prohibited sexual conduct. There is nothing in that definition that would indicate a requirement that the conduct have resulted in a conviction.

That conduct, not the repeated instances of the manufacture of child pornography, forms the basis for the pattern enhancement under U.S.S.G. § 4B1.5(b). Because the two enhancements were premised on distinct conduct, there is no impermissible double-counting. The decision of the district court is AFFIRMED.