08-1818-cr
USA v. Kerley

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

August Term, 2007

(Argued June 13, 2008          Decided September 25, 2008)

Docket No. 07-1818-cr

-------------------------------------------------------

United States of America
                            Appellee,
                            v.

Clifford Kerley
                            Defendant-Appellant.

-------------------------------------------------------

Before: JACOBS, Chief Judge, POOLER, Circuit Judge, and RESTANI,* Judge

Defendant-Appellant Clifford Kerley appeals from a judgment, entered after a jury trial in the United States District Court for the Southern District of New York (Loretta A. Preska, Judge), convicting him of two counts of willful failure to pay a child support obligation in violation of 18 U.S.C. § 228(a)(3) (2000).  Affirmed in part, vacated in part, and remanded for resentencing.

---

* The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

COLLEEN P. CASSIDY, Federal
Defenders of New York, Inc.,
Appeals Bureau (Barry D.
Leiwant, Attorney-in-Charge),
New York, NY <u>for Defendant-
Appellant</u>.

HARRY A. CHERNOFF, Assistant
United States Attorney
(Katherine Polk Failla,
Assistant United States
Attorney, <u>on the brief</u>), for
Michael J. Garcia, United States
Attorney for the Southern
District of New York, New York
NY <u>for Appellee</u>.

**RESTANI, <u>Judge</u>:**

This appeal arises from a conviction of two counts of willful failure to pay a child support obligation in violation of 18 U.S.C. § 228(a)(3). A jury found defendant-appellant Clifford Kerley guilty of failing to make support payments for his twin daughters in accordance with a court order. The issues on appeal are whether (1) the district court erroneously precluded his good faith defense, (2) the second count was multiplicitous, and (3) the district court incorrectly applied the United States Sentencing Guidelines ("Guidelines"). Several questions of first impression are presented, including (1) whether violation of a single child support order which covers two children gives rise to one or

2

two violations of 18 U.S.C. § 228; (2) in what circumstances the child victim of a failure to pay child support is a "vulnerable victim" for the purpose of an enhancement under U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 3A1.1(b)(1) (2006); and (3) whether the "loss amount" of a failure to pay child support includes all arrears or only the amount the defendant could have paid out of his income. For the following reasons, we affirm the conviction on the first count, we vacate the conviction on the second count, and we remand for resentencing.

## BACKGROUND

In 1988, Kerley and Judith Lopez engaged in an extramarital affair that resulted in the birth of twin girls.[1] The relationship ended before the children were born, and Lopez received public assistance after the children's births. In 1990, the Commissioner of Social Services of the City of New York commenced a proceeding against Kerley, seeking child support payments. Kerley

---

[1] The twins were born in 1989. Kerley relies on Lopez's testimony that she became pregnant in 1987 as support for his good faith belief in lack of paternity, but he admitted that the affair occurred in 1988, and nothing indicates that he ever challenged our prior statement to that effect, see United States v. Kerley, 416 F.3d 176, 177 (2d Cir. 2005).

3

denied paternity and requested a blood test.  The New York State Family Court scheduled a blood test for May 2, 1990, and a hearing on the issue of paternity for July 6, 1990, but apparently Kerley did not appear on either day.  On July 6, the Family Court entered filiation orders as to the children and a default support order directing Kerley to make monthly child support payments of $737 for both children.

Without making any payments, Kerley moved to Indiana with his wife and their children in 1991.  In 1995, after receiving notice that he owed support payments, Kerley filed a pro se motion in New York State Family Court seeking to reopen the matter to vacate the filiation and support orders.  He claimed that this was the first time he became aware of the support obligation.  In an affidavit, he stated that he arrived late to the July 6 hearing and denied filiation.  The Family Court denied the motion.

In 1996, the New York City Office of Child Support Enforcement began garnishing Kerley's wages.[2]  The garnishments ceased in 1997, apparently due to a merger involving the employer, but resumed in 2000.  In June 2000,

_____

    [2]  A wage garnishment also occurred in 1992.

Kerley quit his job and, between then and July 2002, changed jobs several times. The Government contended that he did so to avoid the wage garnishments, but Kerley claimed that a 1999 injury prevented him from carrying out his job functions. By the time of his arrest on July 29, 2002, Kerley owed over $106,000 in arrears. The only support payments made were from wage and tax garnishments.

Kerley waived indictment, and the Government charged him in an information with one count of failure to pay a support obligation. During an innocence proffer, Kerley told the Government that he did not make payments because he did not believe he was the father of the children. Before trial, Kerley moved to dismiss the information, arguing that the support order was jurisdictionally defective. The district court granted the motion, United States v. Kerley, No. 02-cr-1529, 2004 WL 1555119 (S.D.N.Y. July 9, 2004), but we reversed and remanded the matter, United States v. Kerley, 416 F.3d 176, 184 (2d Cir. 2005). On remand, the Government filed a superseding indictment charging Kerley with two counts of the offense.

At trial, the disputed issue was whether Kerley's

failure to make the support payments was willful.[3] The Government argued that Kerley was able to make the payments, but arranged his financial circumstances to avoid the obligation. The Government presented evidence to show that Kerley changed jobs and remained unemployed to avoid the wage garnishments, and that Mrs. Kerley's income provided Kerley with a comfortable lifestyle. Although the parties stipulated that Mrs. Kerley's income could not be used to pay the obligation, the court allowed it to be used as evidence of Kerley's financial circumstances.

Kerley stated that he did not make the payments because he believed that he was in compliance with the support order. He testified that in 1996, an Indiana attorney advised him that the wage garnishments put him in compliance with the order.[4] He also testified that he thought "something happened" with his 1995 motion when the wage garnishments stopped in 1997. Trial Tr. 258:20 (Aug. 1, 2006).

---

[3] The relevant period was from June 24, 1998, when 18 U.S.C. § 228(a)(3) came into effect, and July 29, 2002, the date of Kerley's arrest.

[4] Interestingly, Kerley testified that he also asked about joint custody.

6

The jury found Kerley guilty of both counts of the offense.  Applying the Guidelines, the district court sentenced Kerley to forty-one months of imprisonment for both counts.[5]  Kerley appeals.  We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

Kerley argues that the district court improperly precluded his good faith defense, that the conviction on the second count is based on a multiplicitous indictment, and that the district court incorrectly applied Guidelines enhancements.

## A. Good Faith Defense

Kerley argues that he sought to present at trial his good faith belief that he was not the father of the children and therefore thought he did not have to make support payments, but that the district court precluded him from presenting this defense.  He contends that the district court erred in refusing to instruct the jury on the good faith defense upon the ground that any good faith had to be objectively reasonable, and further erred in instructing the

---

[5]  The Guidelines sentencing range should have been calculated at forty-six to fifty-seven months, but the Government miscalculated the sentence.

7

jury to disregard his theory of the defense. The arguments lack merit.

Preliminarily, we reject the Government's claim that because Kerley negotiated and resolved the objections he initially raised, he waived his challenge to the district court's instruction on willfulness. In "accepting" the court's proposed charge, counsel for Kerley stated, "I would prefer the language in my instructions, but your Honor rules, so I will sit down." Trial Tr. 54:13-15 (July 31, 2006). The objection is preserved.

Similarly, contrary to the Government's contention, it is unclear that Kerley never asserted belief in lack of paternity as the theory for his good faith defense. He claims that he abandoned his good faith argument because of the district court's rulings and jury instructions. The record shows that Kerley intended to present evidence that he did not believe the paternity finding and at one point tried to overturn it. See Trial Tr. 25:24—27:7, 71:10—75:4 (July 31, 2006); Notice of Mot. to Vacate Default Order. For purposes of this disposition, we treat the defense as preserved.

We review challenges to jury instructions de novo.

United States v. Bok, 156 F.3d 157, 160 (2d Cir. 1998). A conviction will be reversed for refusal to give a requested charge only if the requested instruction is "legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge." United States v. Doyle, 130 F.3d 523, 540 (2d Cir. 1997) (citations and quotations omitted). We review jury instructions as a whole. United States v. Carr, 880 F.2d 1550, 1555 (2d Cir. 1989).

Under 18 U.S.C. § 228, "[a]ny person who . . . willfully fails to pay a support obligation" is subject to a fine, imprisonment, or both. 18 U.S.C. §§ 228(a)(3), (c)(2). The willfulness standard is borrowed from the tax statutes and is "interpreted in the same manner that the Federal courts have interpreted [the] felony tax provisions." United States v. Mattice, 186 F.3d 219, 225 (2d Cir. 1999) (quoting H.R. Rep. No. 102-771, at 6 (1992)). Therefore, "willfulness" under § 228 means a "voluntary, intentional violation of a known legal duty." Id. (quotations omitted); see Cheek v. United States, 498 U.S. 192, 201 (1991) (interpreting willfulness standard in tax

9

statute).  A defendant found to have acted willfully may negate willfulness by showing ignorance of the law or that, because of a misunderstanding of the law, he had a good faith belief that he was not violating the legal duty.  See Cheek, 498 U.S. at 202.  A good faith belief need not be objectively reasonable to negate willfulness.  See id.

The district court instructed the jury on willfulness as follows:

> The term willfully as it pertains to this element means a voluntary, intentional violation of a known legal duty.  In other words, the defendant must have acted voluntarily and intentionally and with the intent to do something the law forbids.  That is to say with a purpose either to disobey or disregard the law, not as a result of inadvertence, mistake or some other innocent explanation. . . . [Y]ou must . . . find the defendant possessed the specific intent not to pay the support obligation.

Trial Tr. 422:19—25, 424:10—12 (Aug. 2, 2006).  Read as a whole, the instructions captured the essence of a good faith defense.  The instructions do not imply a requirement that a good faith defense must be objectively reasonable.

As to Kerley's argument that the district court instructed the jury to disregard his good faith defense, the court actually instructed the jury neither to consider the

10

validity of the child support order nor to consider whether the defendant was actually the father.[6] The court, however, did not preclude the jury from considering Kerley's state of mind with regard to the mens rea required by the statute. There was considerable evidence admitted as to Kerley's state of mind. The prosecution itself offered testimony as to Kerley's claim that he was not the father. Kerley's statement that he thought something had changed in New York to cause wage garnishment to cease implied that he was unsure of the status of the support order. While counsel chose to emphasize Kerley's negligence to counter the charge of willfulness, the court did not limit the evidence and counsel's arguments to the extent Kerley now asserts. We find no reversible error in this regard.

## B. Multiplicitous Count

Kerley argues that the second count must be vacated because it is multiplicitous and violates the Double Jeopardy Clause. He contends that he violated only one support order and that because § 228 does not clearly

---

[6] Kerley also sought to introduce statements in an affidavit in support of his good faith defense, but the court excluded them on hearsay grounds. The exclusion of those statements is not challenged on appeal.

authorize cumulative punishments for each child covered by a support order, the "rule of lenity" requires that the statute be interpreted to preclude multiple counts.

The district court concluded that "[t]he plain language of the statute makes it clear that the crime is a failure to pay support obligation with respect to a child" and that the crime "is not in any manner keyed to the Court order." Sentencing Tr. 34:7—10. The court continued that "[t]he requirement that each child be supported was embodied in a single order cannot be the basis for a double jeopardy argument" and therefore "the fact that there . . . are two children[] makes it completely appropriate for there to be two counts." Id. at 34:12—16. We review the district court's interpretation of the statute de novo. See United States v. Mitchell, 328 F.3d 77, 81 (2d Cir. 2003).

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." United States v. Chacko, 169 F.3d 140, 145 (2d Cir. 1999). Where a statutory offense is charged as two separate counts, we must determine "whether Congress intended the counts to constitute separate 'units of

12

prosecution.'"  United States v. Handakas, 286 F.3d 92, 98

(2d Cir. 2002) (alterations omitted) (quoting Bell v. United

States, 349 U.S. 81, 82–83 (1955)), overruled on other

grounds by United States v. Rybicki, 354 F.3d 124 (2d Cir.

2003).  If Congress leaves a statute ambiguous as to the

proper unit of prosecution, "the ambiguity should be

resolved in favor of lenity."  Bell, 349 U.S. at 83.  Under

the rule of lenity, courts may not "turn[] a single

transaction into multiple offenses . . . ."  Id. at 84.

        Section 228 criminalizes willful failure to pay "a

support obligation with respect to a child . . . ."  18

U.S.C. § 228(a)(3).  The statute defines "support

obligation" as "any amount determined under a court order

. . . to be due from a person for the support and

maintenance of a child . . . ."  Id. § 228(f)(3).  The

statute does not specify whether failure to pay a support

obligation with respect to multiple children constitutes

multiple offenses.  See id. § 228.  The parties have not

cited any relevant legislative history to support such a

reading.  It is not so clear to us that Congress meant to

distinguish "support obligation" and "court order" as the

Government suggests and the district court concluded, and it

13

is possible that Congress proceeded under the assumption that each court order would mandate payment for only one child.  See, e.g., id. §§ 228(a)(3), (f)(3).[7]  We have stated that "as a matter of statutory construction, we are reluctant to turn a single transaction into multiple offenses.  We therefore impute to Congress the intent to impose separate punishments for the same underlying conduct only when Congress has clearly articulated that intent." United States v. Salameh, 261 F.3d 271, 278 (2d Cir. 2001) (quotations, citations and alterations omitted); see also United States v. Santos, 128 S. Ct. 2020, 2026 (2008) ("When interpreting a criminal statute, we do not play the part of a mind reader. . . .  'Probability is not a guide which a court, in construing a penal statute, can safely take.'" (alteration omitted) (quoting United States v. Wiltberger, 5 Wheat. 76, 105 (1820))).  Because Congress failed to specify the proper unit of prosecution, the rule of lenity requires that we interpret the statute in favor of Kerley.[8]  See

---

[7]  Here, the court order itself is ambiguous as to whether Kerley owed one support obligation in the sum of $737 monthly or two separate obligations in the amount of $368.50 for each child.

[8]  The Government's argument that Congress's use of "a"
(continued...)

14

<u>Bell</u>, 349 U.S. at 83 (holding that transportation of two women on the same trip and in the same vehicle in violation of the Mann Act constituted a single offense).  We vacate the conviction on the second count and remand the matter to the district court for resentencing on the basis of a conviction for one count.[9]

## C. Sentencing

Kerley challenges the court's application of the "vulnerable victim," "loss amount," and "obstruction of justice" Guidelines enhancements.  We review the district court's findings of fact for clear error and accord deference to the court's application of the Guidelines to the facts.  <u>United States v. Dupre</u>, 462 F.3d 131, 144 (2d Cir. 2006).  We review the district court's interpretation of the Guidelines <u>de novo</u>.  <u>United States v. Maloney</u>, 406

---

[8](...continued)
instead of "any" renders the statute unambiguous lacks merit.  Contrary to the Government's argument, the <u>Bell</u> court's finding that the statute at issue there was ambiguous did not hinge on the use of the word "any."  <u>See</u> <u>Bell</u>, 349 U.S. at 81-84.  The Government's argument that such an interpretation of the statute at issue here would provide a more lenient result in favor of the defendant is unpersuasive.

[9]  We need not consider Kerley's prosecutorial vindictiveness claim in light of our disposition of the issue under the rule of lenity.

F.3d 149, 151—52 (2d Cir. 2005).

## 1.  "Vulnerable Victim" Enhancement

Kerley argues that the circumstances here do not warrant application of the vulnerable victim enhancement. To the extent that the enhancement applies to child support cases, we agree that its requirements have not been met.

The vulnerable victim enhancement applies where "the defendant knew or should have known that a victim of the offense was a vulnerable victim."  U.S.S.G. § 3A1.1(b)(1).  A "vulnerable victim" is defined as one "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct."  Id. § 3A1.1 cmt. n.2.  The vulnerability "must bear some nexus to the criminal conduct" and "the defendant generally must have singled out the vulnerable victims from a larger class of potential victims."  United States v. McCall, 174 F.3d 47, 50 (2d Cir. 1998).  An inquiry into a victim's vulnerability must be "individualized" and must not be based on "broad generalizations about victims based upon their membership in a class . . . ."  Id.

The district court found that the twins were

16

particularly susceptible to the criminal conduct because their mother was a recent immigrant without financial resources or family support. The court noted that Kerley was aware of this situation and distinguished this case from those where "the custodial parent has adequate resources." Sentencing Tr. 26:2—3. The court concluded that Kerley targeted the children for nonpayment because they were "destitute and unable to pursue" him. Id. at 26:7.

The circumstances relied upon by the district court are insufficient to distinguish these children from the typical subjects of child support cases. The children were not rendered less capable of avoiding nonpayment by their condition of poverty, as state and local authorities were pursuing Kerley on their behalf. To the extent that one of the children has a disability, as alleged by the Government, there is no evidence that Kerley knew or should have known of the disability, or that Kerley targeted her because of the disability. Instead, the evidence shows that Kerley refused to make payments because he was interested only in his own situation and his immediate family. Kerley did not maliciously refuse to support his twin daughters because of who they were; his crime was that he failed to

17

consider them at all.  There was no nexus between the twins'
individual circumstances and Kerley's failure to fulfill the
support order, and therefore the vulnerable victim
enhancement does not apply.

## 2.  "Loss Amount" Enhancement

Kerley argues that the district court erred in
deeming the total arrears as the loss amount for Guidelines
purposes.  He claims that the loss amount should be the
amount that he was able to pay and that, according to the
evidence, it should be substantially less than the court's
calculated amount of $152,491.[10]  This argument lacks
merit.[11]

---

[10]  Under the enhancement, the base offense level
increases in proportion to the loss amount as follows:

|     |                     |             |
|-----|---------------------|-------------|
| (A) | $5,000 or less      | no increase |
| (B) | More than $5,000    | add 2       |
| (C) | More than $10,000   | add 4       |
| (D) | More than $30,000   | add 6       |
| (E) | More than $70,000   | add 8       |
| (F) | More than $120,000  | add 10      |
| (G) | More than $200,000  | add 12      |

U.S.S.G. § 2B1.1(b)(1).

[11]  Kerley also argues that the court erroneously
applied the "unconstitutional" presumption that he was able
to pay the total arrears.  Section 228 provides that "the
existence of a support obligation . . . creates a rebuttable
presumption that the obligor has the ability to pay the
(continued...)

18

The Guidelines define "loss amount" as "the amount of child support that the defendant willfully failed to pay." U.S.S.G. § 2J1.1 cmt n.2. The failure to pay is willful to the extent that the defendant had the ability to pay. See Mattice, 186 F.3d at 228—29. The extent of the ability to pay depends on the income left over "after meeting [the] basic subsistence needs . . . ." Id. at 229.

The district court found that Kerley could have paid the total arrears. The court reasoned that Mrs. Kerley's earnings provided Kerley with "a very comfortable way of life with respect to all necessities," and that Kerley, an "able[-]bodied person," could easily have earned a higher income. Sentencing Tr. 16:3—4, 14. From the way he organized his financial situation, the court concluded, all his income could be deemed disposable income.

---

(...continued)
support obligation." 18 U.S.C. § 228(b). Some courts have found this presumption to be unconstitutional. See United States v. Edelkind, No. 05-60067, 2006 WL 1453035 (W.D. La. May 18, 2006); United States v. Casey, 05CR330, 2006 WL 277092 (D. Neb. Feb. 3, 2006) United States v. Pillor, 387 F. Supp. 2d 1053 (N.D. Cal. 2005); United States v. Morrow, 368 F. Supp. 2d 863 (C.D. Ill. 2005); United States v. Grigsby, 85 F. Supp. 2d 100 (D. R.I. 2000). We need not decide the constitutionality or propriety of the application of the presumption because, as will be seen, the evidence shows that Kerley had the ability to pay the total arrears.

The court found incredible Kerley's injury claim, and concluded that he changed jobs and stayed unemployed to avoid the wage garnishments.

The district court's findings are not erroneous. Although Kerley correctly argues that his total gross income could not all be deemed disposable income, as he paid taxes on his gross income, and that the district court improperly considered his subsistence needs and personal expenses as being provided by his wife's earnings, the evidence shows that he could have earned a higher income but chose not to do so. Further, Kerley's failure to seek a reduction or remission of the support obligation suggests willfulness. See Mattice, 186 F.3d at 229 ("A non-custodial parent who does not have the funds to satisfy the child support award, and who does not obtain a reduction or remission of the award because of inability to pay, will almost certainly be engaged in willful defiance of the state court's child support order." (quoting United States v. Ballek, 170 F.3d 871, 873 (9th Cir. 1999))). The district court did not err in deeming the total arrears as the loss amount.

## 3. "Obstruction of Justice" Enhancement

Kerley argues that the district court's finding of

willful perjury in support of its application of the obstruction of justice enhancement was unsupported because his testimony was "plausible, not contradicted, and corroborated by Mrs. Kerley's testimony." Appellant's Br. 57. This argument also lacks merit.

The obstruction of justice enhancement applies where a "defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense," U.S.S.G. § 3C1.1, including perjury, United States v. Dunnigan, 507 U.S. 87, 93–94 (1993). To apply the enhancement on grounds of perjury, the district court must find that "all of the factual predicates for a finding of perjury" have been shown. United States v. Ben-Shimon, 249 F.3d 98, 102 (2d Cir. 2001) (quoting Dunnigan, 507 U.S. at 95). The court must "find that the defendant gave 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory . . . .'" United States v. Zagari, 111 F.3d 307, 328 (2d Cir. 1997) (quoting Dunnigan, 507 U.S. at 94).

The district court found that Kerley's reasons for changing jobs, his injury claim, testimony regarding the Indiana attorney's legal advice, and claims that he arrived late to the July 6 hearing were perjurious. The court based its findings on Kerley's attitude and demeanor, inconsistent explanations, and failure to raise the defenses during the innocence proffer, and a lack of supporting evidence. The district court made no clear error as to its factual findings.[12] Further, the perjured testimony is material, as it goes to the issue of willfulness.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in its rulings as to the good faith defense, and that the rule of lenity requires that we vacate the conviction on the second count of the offense. We also conclude that although the district court correctly

---

[12] The district court found a contradiction between Kerley's claim that his wife accompanied him on July 6 when he attempted to appear for a hearing, and Kerley's prior claim that he failed to appear for the blood test because he did not want his wife to know about the paternity allegation. This finding is somewhat problematic. Kerley did not give specific testimony as to timing, although it is possible that he told his wife of the allegation between May 2 and July 6. Nonetheless, because the other findings are not erroneous, the obstruction of justice enhancement stands.

22

applied the loss amount and obstruction of justice enhancements under the Sentencing Guidelines, the court erred in concluding that the vulnerable victim enhancement was applicable.  Accordingly, we vacate the conviction on the second count and remand to the district court for resentencing in accordance with this opinion.