In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2555

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MAURICE BELL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CR 437—**Matthew F. Kennelly**, *Judge.*

ARGUED DECEMBER 7, 2009—DECIDED MARCH 16, 2010

Before CUDAHY, WOOD, and EVANS, *Circuit Judges*.

CUDAHY, *Circuit Judge.* In 2008, a grand jury returned a one-count indictment charging Maurice Bell with willful failure to pay child support from February 2000 to June 2007, in violation of the Deadbeat Parents Punishment Act of 1998 (DPPA), 18 U.S.C. § 228(a)(3). Bell moved to dismiss the indictment as barred by the statute of limitations, but the district court denied the motion. After a jury trial, Bell was convicted and subsequently

sentenced to a term of 24 months' imprisonment and ordered to pay restitution in the amount of $83,890.37. He now appeals because he contends that the district court erred by denying his motion to dismiss his indictment, by improperly instructing the jury and in calculating enhancements of his sentence. We affirm in part, and reverse and remand for re-sentencing in part.

## I. Background

In 1996, the state of Illinois determined that Bell was the father of C.W., a son born to Brooke Wolf-Lindsey (Wolf). The Illinois Department of Public Aid then ordered Bell to pay Wolf child support of $520/month. By 1999, he owed her more than $14,000, and the Circuit Court of DuPage County, Illinois, ordered him to pay child support of an additional $104/month, to cover some of his arrearage. Bell then left the state.

He spent the subsequent years with a series of women in Arizona and California, and worked as a mortgage broker, among other occupations. According to his friends out west, Bell lived big—driving luxury cars, golfing, flashing rolls of hundred dollar bills and filling custom-built closets with tailored clothes. Although the women he dated claimed that they financed this lifestyle (some took him to small claims court to recoup their loans), he had access to more than $300,000 in funds from gambling proceeds, loans from friends and his regular earnings, but he paid less than $16,000 in child support during that time, through wage garnishment. As of May 2007, Bell owed his son $65,219.84 in unpaid child support and accumulated interest.

Bell was indicted for violation of 18 U.S.C. § 228 based on his failure to pay child support as ordered from 2000 to 2007. He moved to dismiss the indictment because he contended that the government's cause of action accrued in 2000 and, therefore, that the applicable statute of limitations ran in 2005. The district court denied the motion based on its holding that § 228 is a continuing offense. At trial, the district court did not require the government to prove that the defendant knew that his actions violated a federal statute. Instead, it defined willfulness as charged to require proof that the defendant violated a known legal duty. After Bell was convicted at trial, he moved for a judgment of acquittal or for a new trial in part because he contended that the district court erred in failing to accept his jury instruction. The district court denied this post-trial motion. At sentencing, the district court applied a two-level enhancement for a violation of a judicial or administrative order based on the "distinct harms" involved in the conduct addressed respectively by the base-offense level and by the enhancement.

## II.  Standard of Review

An appellate court reviews a district court's interpretation of a statute and the Sentencing Guidelines de novo and its factual findings for clear error. See, e.g., *United States v. Webber*, 536 F.3d 584, 599 (7th Cir. 2008) (de novo review applies to whether a district court's jury instructions "fairly and accurately summarize the law") (internal citation omitted); *United States v. Katalinic*, 510 F.3d 744,

746 (7th Cir. 2007). Whether the district court followed proper sentencing procedure is a legal question reviewed de novo. *United States v. Smith*, 562 F.3d 866, 872 (7th Cir. 2009).

### III. Discussion

**1.  18 U.S.C. § 228 is a continuing offense.**

If a criminal statute contains no explicit statute of limitations, the generic, federal five-year statute applies. See 18 U.S.C. § 3282(a). Bell contends that, in 2000, when his child-support arrearage exceeded $10,000, the statute of limitations began to run and thus the government's indictment should have been dismissed as untimely. The government responds that 18 U.S.C. § 228 is a continuing offense and is not completed until the offense expires. See *United States v. Yashar*, 166 F.3d 873, 875-76 (7th Cir. 1999). This is an issue of first impression for our circuit.

Typically, an offense accrues when each element of the offense has occurred. Continuing offenses do not follow this rule, but continue until the defendant ceases the offending conduct (or an indictment is returned)—for example at the last act in furtherance of a conspiracy. See *id*. at 876. To determine whether an offense is "continuing," courts examine whether the language of a criminal statute compels that conclusion or whether the nature of the crime is such that Congress must have intended it to be treated as a continuing one. See *id*. at 875 (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970)).

Examples of continuing offenses include the failure of a sex offender to register as well as escapes from incarceration. See *United States v. Bailey*, 444 U.S. 394, 413 (1980) (escape from federal custody); *United States v. Dixon*, 551 F.3d 578, 582 (7th Cir. 2008) (failure to register as a sex offender); but see *Toussie*, 397 U.S. at 119 (applying the rule of lenity to hold that failure to register for the draft is not a continuing offense).

We find persuasive a recent Fifth Circuit decision holding that the DPPA is a continuing offense. The Fifth Circuit, responding to the same arguments advanced by Bell, recently determined by examining the statute and its legislative history that § 228 defines a continuing offense. *United States v. Edelkind*, 525 F.3d 388, 393-95 (5th Cir.), *cert. denied,* 129 S.Ct. 246 (2008). The Fifth Circuit noted that the language of the statute describes the offense continuing over a period of time either directly in terms of an accumulation of years of delinquency or indirectly in terms of an accumulation of money such that "Congress [ ] imagined the criminalized conduct to last continuously beyond a two-year period or the accumulation over $10,000." See *id.* at 394. In addition, the legislative history of the predecessor statute, the Child Support Recovery Act of 1992 (CSRA), suggests that Congress sought to remedy the problems of long-term child-support payment delinquency created by those who continually evade court processes. See *id.* at 394-95. In addition, the Fifth Circuit noted that the majority of courts to address the nature of § 228 concluded that it is a continuing offense and that state courts routinely hold that state statutes criminalizing the willful failure to meet child-support obligations create continuing

offenses. See *id.* at 393-94. We agree with the Fifth Circuit's well-reasoned analysis of the statute.

In addition, as the government points out, the penalties increase if the deadbeat parent has failed to pay child support for more than two years, suggesting that it would be nonsensical if the punishment increased for the first two years (or when the arrearage exceeded $10,000), but then fell to zero if the defendant successfully evaded the law for five years. Compare 18 U.S.C. § 228(a)(1)-(2) with § 228(a)(3).

Lastly, Bell suggests that *United States v. Irvine* compels the conclusion that the DPPA is not a continuing offense. 98 U.S. 450 (1878). In *Irvine*, an attorney was charged with wrongfully withholding his client's pension payment. See *id.* at 450. The Supreme Court determined that the offense was completed when the attorney failed to pay over the pension and therefore that the applicable statute of limitations had run when its term expired. See *id.* at 452. An attorney's withholding a pension, a discrete act, is different from a parent's failing to pay an ongoing support commitment accumulating month by month, to his child. We therefore hold that the district court properly denied Bell's motion to dismiss his indictment.

2. **The district court did not err in instructing the jury as to the standard for willfulness.**

Bell also contends that the district court should have instructed the jury that the government had to prove that a defendant must understand that he is violating

a federal statute to be guilty under 18 U.S.C. § 228. This is also a matter of first impression for us.

Section 228, which creates an offense for a defendant who "willfully fails to pay a child support obligation," does not define "willfully." "Willful" is a word of many meanings, and its definition is often influenced by its context. See *United States v. Wheeler*, 540 F.3d 683, 689 (7th Cir. 2008) (citing *Ratzlaf v. United States*, 510 U.S. 135, 141 (1994)). Willful may refer to a defendant's awareness of his conduct (suggesting intentionality) or simply that his conduct is illegal. See *id.*; see also *United States v. Ladish Malting Co.*, 135 F.3d 484, 491-92 (7th Cir. 1998) (equating willfulness with an awareness of the factual and legal requirements, although declining to decide whether reckless disregard of the regulations was sufficient). The legislative history of the DPPA suggests that Congress intended to draw the DPPA's concept of "willfulness" from federal tax statutes, 26 U.S.C. §§ 7202, 7203. See H.R. Rep. 102-771, at 6 (1992) (discussing willfulness for purposes of the CSRA). The House Report explains, with reference to then-current cases involving criminal federal tax laws, that the willfulness element of a federal tax felony requires the "intentional violation of a known legal duty" and implies a "bad purpose or evil motive." See *id*. This legislative history does not suggest that the defendant must know of the specific statute that he is violating—only that he knows of the legal duty (the duty to support the child) that he is violating.

Bell, however, takes this bit of legislative history and invokes oft-cited dicta from *Bryan v. United States*, in which the Supreme Court distinguished the standard for

willfulness applicable to a statute like the one crim-
inalizing dealing in firearms without a license from the
much more demanding "willfully" standard applicable
to evaders of complex tax statutes. 524 U.S. 184, 194 (1998)
(citing *Cheek v. United States*, 498 U.S. 192 (1991)). The
Supreme Court reasoned that in cases where the statute
is particular complex and capable of criminalizing the
conduct of the unwary taxpayer, a more exacting defini-
tion of willfulness should apply. See *Bryan*, 524 U.S. at 194-
95; see also *United States v. Starnes*, 583 F.3d 196, 210-12
(3d Cir. 2009) (distinguishing *Bryan*, *Ratzlaf*, and *Cheek*). As
the Second Circuit has explained, violation of a child-
support order is not apparently innocent conduct, and it
is fitting that the defendant need not know of the
specific federal law he is violating. See *United States v.
Mattice*, 186 F.3d 219, 226 (2d Cir. 1999) (Sotomayor, J.)
(noting also that the tax statutes discussed in *Bryan* pre-
scribe the legal duty imposed by those specific tax stat-
utes).

Bell contends that *Mattice* is rarely cited outside the
Second Circuit and therefore has weak persuasive value.
Regardless whether the case is frequently cited, we find
it persuasive. As *Bryan* clarified, in most tax cases, the
government must prove that the defendant knew the
facts that constitute the offense and that his conduct
was unlawful, but it need not prove that he knew that
he was violating a specific statute to prove a willful
violation. See *Bryan*, 524 U.S. at 194-95; *United States v.
Fields*, 500 F.3d 1327, 1332 (11th Cir. 2007) (discussing
§ 228); see also *United States v. Kerley*, 544 F.3d 172, 177 (2d
Cir. 2008) (relying on *Mattice* and explaining that the
statute allows for a defense based on the defendant's

good faith belief that he was not violating a legal duty); *United States v. Harrison*, 188 F.3d 985, 986 (8th Cir. 1999) (interpreting willfulness under CSRA as "an intentional violation of a known legal duty"); *United States v. Mathes*, 151 F.3d 251, 253 (5th Cir. 1998) (same). Likewise, in the present case, the government was not required to prove that Bell knew he was violating a federal statute.

The district court required that the government prove that Bell violated his known legal duty to pay child support. The court instructed the jury:

> An act is done willfully if it is done voluntarily and intentionally with the purpose of avoiding a known duty under a state court order to pay a child support obligation. In determining whether the defendant acted willfully in failing to pay, you must consider whether the defendant had the ability to pay some portion of the past due child support obligation. Ability to pay means that the defendant had the ability, after meeting his basic subsistence needs, to pay some portion of the past due child support obligation.

In so doing, it did not err and the district court properly denied Bell's motions based on the definition of willfulness.

### 3.  Applying a two-level enhancement for violating a court order is impermissible double counting.

The Sentencing Guidelines specify that, for violations of § 228, the applicable offense level is set by cross-reference

to § 2B1.1 for theft, property destruction and fraud. See U.S.S.G. § 2J1.1 cmt. n. 2. Incorporation of a guideline by cross-reference requires incorporation of "the entire offense guideline (i.e., the base-offense level, specific offense characteristics, cross references, and special instructions)." U.S.S.G. § 1B1.5(a). The cross-reference, U.S.S.G. § 2B1.1, carries a base offense level of six. The district court increased Bell's offense level by two, pursuant to the specific offense characteristic § 2B1.1(b)(8)(C), because he violated a court order in the commission of the offense. Bell's total offense level was therefore 14, which included a six-level enhancement for the amount of the arrearage.

Bell complained that the enhancement for a violation of a court order was impermissible double counting because Bell's violation of the order was an element of the offense of conviction. The district court disagreed and explained that the Sentencing Commission must have been aware that § 2B1.1(b)(8)(C) would apply to every violation of § 228 and intended that result. The district court noted that even though a violation of a court order is an element of the offense, the applicable guideline would not take this conduct into account absent the enhancement. In addition, it followed the reasoning of the Eleventh and Second Circuits allowing the enhancement because the additional two levels punished Bell separately for the distinct harms imposed on the child and his family as well as on the court system for violation of a court order. See *United States v. Maloney*, 406 F.3d 149, 153-54 (2d Cir. 2005); *United States v. Phillips*, 363 F.3d 1167, 1169 (11th Cir. 2004). Had Bell not received the two-

level enhancement, his sentencing range would have been 12-18 months rather than 18-24 months. The DPPA has a statutory cap of two years, and Bell was sentenced to 24 months. See 18 U.S.C. § 228(c)(2).

The DPPA criminalizes the acts of a person who "willfully fails to pay a support obligation with respect to a child." See, e.g., 18 U.S.C. § 228(1)-(3). A "support obligation" is defined as "any amount determined under a court order or an order of an administrative process pursuant to the law of a State . . . to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living." 18 U.S.C. § 228(f)(3). Consequently, violation of a judicial or administrative order is an element of the offense. The two-level enhancement, § 2B1.1(b)(8)(C), applies if a defendant "violat[es] . . . any prior, specific judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines." In this case, Bell failed to pay a child-support obligation in violation of an order issued by the Circuit Court of DuPage County in 1999. This conduct, of course, was charged in the indictment as part of his violation of the DPPA.

Impermissible double counting occurs when the same conduct justifies two upward adjustments under the Sentencing Guidelines or the same underlying facts that establish an element of the base offense are used to justify an upward enhancement. See *United States v. Haynes*, 582 F.3d 686, 710 (7th Cir. 2009); *United States v. Lallemand*, 989 F.2d 936, 939 (7th Cir. 1993). Double counting does not occur if the adjustment addresses a

sufficient additional or separate aspect of the defendant's conduct, even if overlapping conduct supports both the underlying level and the adjustment. See *United States v. Blum*, 534 F.3d 608, 612 (7th Cir. 2008); *United States v. Shearer*, 479 F.3d 478, 484 (7th Cir. 2007); *United States v. Parolin*, 239 F.3d 922, 929 (7th Cir. 2001); *United States v. Wimberly*, 60 F.3d 281, 288 (7th Cir. 1995) (allowing an enhancement for the victim's age, even though the base offense incorporated the victim's age, because the applicable sentencing guideline applied to other statutes that did not necessarily involve young minors); *United States v. Sorenson*, 58 F.3d 1154, 1161 (7th Cir. 1995) (holding that a base-offense level reflecting an assault involving a dangerous weapon may be enhanced based on the defendant's use of that weapon). When the guidelines establish an offense level for a statute that defines a single crime, a sentencing court should presume that the specified offense level accounts for every element of that crime. See *United States v. Sinclair*, 74 F.3d 753, 763 (7th Cir. 1996) (noting that the enhancement for abuse of trust was not impermissible double counting because the statute addressed two crimes, only one of which involved abuse of trust, and therefore the base-offense level did not account for that conduct); but see *United States v. Stevenson*, 6 F.3d 1262, 1270 (7th Cir. 1993) (defendant who violated 21 U.S.C. § 845(b)(2) by employing a minor could not also receive a § 3B1.1 enhancement for occupying a leadership role).

The question we must answer is what conduct is addressed by the cross-referenced base-offense level and whether Bell's conduct in violating the DPPA may be

permissibly teased into severable "aspects" for purposes of sentencing. The government contends that the base-offense level specified under the applicable guideline provision punishes only certain aspects of Bell's conduct and the enhancement takes into account distinct conduct in such a way that there is no double counting. That is, the government argues that courts should not assume that the base-offense level specified by the cross-reference necessarily addresses all conduct included in the elements of the offense. See *United States v. Schmeilski*, 408 F.3d 917, 919 (7th Cir. 2005) (defining double counting as two or more upward adjustments "within the same guidelines range, when both are premised on the same conduct," unless the "enhancements address distinct aspects of the defendant's conduct").

The government notes that it is often the case that the offense level for a specific crime will always permit the inclusion of a particular enhancement. For example, in the context of bank robbery, e.g., 18 U.S.C. § 2113(a), every convicted bank robber is sentenced to a base-offense level, § 2B3.1(a) (for "Robbery"), enhanced by a specific offense characteristic of two levels for taking money from a financial institution, § 2B3.1(b)(1). We believe, however, that the difference between bank robbery and violations of the DPPA is that there is no analogous guideline provision for bank robberies that cross-references another guideline provision where an enhancement would apply to the circumstances of every conviction under the statute.

The government contends that we have acknowledged in dicta that "it may be possible, without double

counting, to apply an upward adjustment to all perpetra-
tors of a particular offense." *Lallemand*, 989 F.2d at 939 (for
example, all postal carriers who steal mail would
receive an enhancement to the base-offense level for
theft for abuse of a position of trust). However, more
recently, we have explained that the use of an enhance-
ment based on conduct that encompasses an element of
the offense is double counting "only if the offense itself
*necessarily* includes the same conduct as the enhance-
ment." See *United States v. Beith*, 407 F.3d 881, 889 (7th Cir.
2005) (quoting *United States v. Senn*, 129 F.3d 886, 897 (7th
Cir. 1997)) (both cases noting that when the substantive
offense punishes conduct beyond that undertaken by
defendant, imposing sentencing enhancements based
on defendant's particular conduct in committing the
offense is not impermissible double counting).

Although the district court found its reasoning persua-
sive, the Second Circuit may define double counting
differently than this circuit. In *Maloney*, the Second Circuit
determined that the two-level enhancement for violation
of a child-support order was not impermissible double
counting because it addressed distinct harms—"theft" of
the child's support and contempt for the judicial sys-
tem. 406 F.3d at 153-54; see also *Phillips*, 363 F.3d at 1169
(holding that the two-level enhancement was not double
counting in part because it reflected the heightened
seriousness of violating a court order). In contrast, we have
not embraced the "separate harms" theory of double
counting, focusing, as we have noted, on the conduct that
supports the enhancements. See, e.g., *Blum*, 534 F.3d at
612. In our view, there is no reason to believe conduct

that *always* inflicts multiple distinct harms may validly receive a punishment enhanced on account of one of the harms.

Under our circuit precedent, therefore, the district court engaged in double counting by applying the cross-reference for § 228 and then enhancing it for conduct that constitutes an element of the offense—violation of a court order. Consequently, to apply both the cross-reference for § 228 and the enhancement for violation of a court or administrative order is impermissible double counting.[1]

For the foregoing reasons, the district court is AFFIRMED in part, and VACATED and REMANDED for re-sentencing.

---

[1] Because this opinion creates a split between the circuits, it has been circulated among all judges of this court in regular active service under Circuit Rule 40(e). A majority did not favor hearing the case en banc.