# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-2279

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID C. BROCK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 02 CR 79—**Larry J. McKinney**, *Chief Judge.*

SUBMITTED DECEMBER 7, 2005—DECIDED JANUARY 9, 2006

Before FLAUM, *Chief Judge*, and BAUER and WOOD, *Circuit Judges.*

FLAUM, *Chief Judge.* Following a jury trial, Defendant David C. Brock ("Brock") was found guilty of two counts of possession with intent to distribute 500 grams or more of methamphetamine; two counts of possession with intent to distribute cocaine (500 grams and an unspecified amount); and two counts of felon in possession of a firearm. The district court sentenced Brock to 360 months imprisonment on the drug counts and 120 months, to be served concurrently, on the felon-in-possession counts.

Brock appealed, challenging his conviction and sentence. *See United States v. Brock*, 417 F.3d 692 (7th Cir. 2005). We

affirmed Brock's conviction, but found that Brock's sentence violated the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). We remanded to the district court, pursuant to *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), to allow the sentencing judge to determine whether, if required to resentence under the now-advisory sentencing guidelines regime, he would reimpose Brock's original sentence.

On remand, the district court stated that it would have given Brock the same sentence had the sentencing guidelines been advisory at the time it sentenced him. Brock now appeals from the district court's order on remand. For the following reasons, we affirm the order of the district court.

## I.  Background

The central issues in this appeal are whether the district court's order on remand is sufficient to demonstrate that the district court gave meaningful consideration to the sentencing factors set forth in 18 U.S.C. § 3553(a), whether Brock's sentence was reasonable, and whether this Court should reconsider the limited remand approach it adopted in *Paladino*, 401 F.3d 471. Because these issues do not require us to examine all of the facts leading up to Brock's arrest and conviction, we refer readers to the Court's earlier decision in this case, *Brock*, 417 F.3d 692, for a more detailed discussion of the case's background.

During Brock's trial, the government introduced evidence seized during searches of Brocks' residence and a house next door to the residence (in which Brock rented a room to use as a "stash house"), including 8.42 kilo-grams of methamphetamine, 1.037 kilograms of cocaine, and 21 firearms. The government also presented the testimony of two witnesses, Joel Dyer and Scott Lewis, who testified that they had engaged in methamphetamine transactions with Brock, involving an additional 7.22 kilograms of the drug.

The jury returned a guilty verdict on all six counts. The jury did not make a specific finding that Brock possessed any amount of methamphetamine and cocaine above the 1.5 kilograms expressly charged in the indictment.

At sentencing, the district court determined that, based on the amount of drugs found at Brock's residence and the residence next door, Brock's base offense level under the federal sentencing guidelines was 36. The district court added a 2-level enhancement because Brock possessed firearms during the commission of his offenses. Additionally, the district court added a 2-level enhancement for "relevant conduct," *see* U.S.S.G. § 1B1.3(a)(2), based on Dyer and Lewis's testimony that Brock had transacted business involving an additional 7.22 kilograms of methamphetamine. These enhancements produced a base offense level of 40. Based on Brock's criminal history category II, the guidelines yielded a sentencing range of 324 to 405 months imprisonment on the drug counts. After considering the seriousness of the offense, the quantity of drugs, the number of guns involved (21), Brock's criminal history, and Brock's age, the district court imposed a sentence of 360 months imprisonment on the drug counts and 120 months, to be served concurrently, on the felon-in-possession counts.

Brock appealed his conviction and sentence. *See United States v. Brock*, 417 F.3d 692 (2005). We affirmed Brock's conviction. However, we found that, under *United States v. Booker*, 543 U.S. 220 (2005), Brock's sentence violated the Sixth Amendment because the elevated sentencing range used by the district court was based on facts, regarding the quantity of drugs, which were not found by a jury and proved beyond a reasonable doubt. We therefore ordered a limited remand to the district court, pursuant to *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), "to permit the sentencing judge to determine whether he would (if required to resentence) reimpose his original sentence." *Id.* at 484.

On remand, the district court indicated that it would have imposed the same sentence had the sentencing guidelines been advisory at the time it sentenced Brock. Brock appealed.

## II. Discussion

Brock now raises three challenges to his sentence. First, Brock maintains that the district court's "cursory ruling on remand fails to provide adequate assurance that the district court gave meaningful consideration" to the sentencing factors set forth in 18 U.S.C. § 3553(a).

Brock is correct that the district court's ruling on remand is cursory. The order contains a single sentence: "This Court would not have sentenced David Brock to any different sentence had the guidelines been advisory at the time of the imposition of his sentence." From this statement alone, we cannot determine whether the district court gave meaningful consideration to the statutory factors. However, in reviewing Brock's sentence, "[i]t is enough that the record confirms that the judge has given meaningful consideration to the section 3553(a) factors." *United States v. Williams*, 425 F.3d 478, 480 (7th Cir. 2005).

In this case, we must look to Brock's sentencing hearing. At that hearing, Brock's attorney argued that Brock should be given the minimum sentence available. Given Brock's age of 45, he would be 72 when released from prison if he received the minimum sentence under the guidelines. Brock's attorney also emphasized Brock's status as a veteran, and noted that this was "only his second conviction." The government argued in response that a sentence at the high end of the guidelines was appropriate. The government noted that Brock was in possession of "21 firearms, many of them loaded, including one, which I believe was a Tec-9, which had a 30 round extended clip magazine." The government also argued that the amount of

money seized from Brock's home and the home next door—$35,000—indicated that Brock was a "source of supply" for methamphetamine and cocaine and had received a large share of profits from his drug activity. Additionally, the government maintained that Brock's age should be an aggravating factor, because Brock "should know better." Finally, the government pointed to Brock's criminal history. Brock had a previous conviction for cocaine dealing, and was sentenced to 25 years imprisonment. This sentence was reduced to 17 years imprisonment and 8 years probation. The probation was then reduced 2 years, and his probation ended in December 1998. Three to four months later, according to Dyer's testimony, Brock returned to drug dealing.

After hearing this testimony and reviewing the parties' submissions, the district court sentenced Brock to 360 months imprisonment on the drug counts, in the middle of the sentencing range, and a concurrent 120 months on the felon-in-possession counts. The district court explained its sentencing decision:

> I don't have to lecture you about the seriousness of methamphetamine and how that interferes with people's lives, et cetera. I suspect you know that as well as anybody. I wish you had paid more attention to it rather than just being in the business for your own personal aggrandi[z]ement and making money.
>
> . . . [A]s I make a determination as to where within those Guidelines I think you ought to be, I look back at the specifics of the crime that the jury believed that you were guilty of and, as I say, there is an awful lot of drugs involved here, a lot of methamphetamine, and this sentence needs to reflect the amount of methamphetamine, which it does, because the Guidelines take that into account.
>
> The Guidelines also take into account the guns that were involved in your business. There were 21, or

so. . . . That many guns and that much drugs pushes me away from the bottom of the Guidelines. There [are] just too many drugs and too many guns. Too much danger to the community when your business was in operation.

I looked at your record, as I look to see where within those Guidelines you should be, and I see this dealing in cocaine and the time you have already spent for having been involved in drugs, and that you have gotten a fairly sizeable reduction in your sentence and then went right back to selling drugs. That is not—that kind of information pushes me from the bottom of the Guidelines.

And, on the other hand, Mr. Brock, I look at your age and I add up these months and you are going to be in your 70s by the time you come out. All that the system has asked you to do in the past, Mr. Brock, is not deal in drugs, and you have done it once before and then you did it again.

And so, as I reflect then on where you should be between 324 and 405 I consider the total amount of drugs that were involved and the guns that are involved and the amount of havoc you have wreaked on this community for all this time. I think it is appropriate to sentence you more toward the upper middle of these Guidelines.

Brock maintains that this explanation by the district court is insufficient. According to Brock:

At the time of the original sentencing hearing, factors such as Mr. Brock's age, military service, and the loss of his father at a young age, were treated as irrelevant under the then-mandatory Guidelines. . . . Indeed, other than a passing reference to Mr. Brock's age, the district judge did not address any of these factors when imposing the original sentence. Now, such factors must be

considered as aspects of the defendant's history and characteristics. (Citing 18 U.S.C. § 3553(a)(1).)

Brock's characterization of the role of the 3553(a) factors pre-*Booker* is not entirely accurate. "Until *Booker,* the uses that a sentencing judge could make of the factors listed in section 3553(a) were severely circumscribed by the next subsection in order to preserve the mandatory character of the guidelines." *United States v. Dean*, 414 F.3d 725, 728 (7th Cir. 2005). Section 3553(b) provided that the sentencing court "shall impose" a sentence within the guidelines range, "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b)(1). Thus, pre-*Booker*, the § 3553(a) factors were relevant in deciding where within the guidelines range a sentence should fall, but a district court could prescribe a sentence that fell outside the range only if specific circumstances were present, as contemplated by the guidelines and policy statements and official commentary of the Sentencing Commission. In Brock's sentencing hearing, Brock's age, military service, and other personal characteristics were not "irrelevant," but instead were relevant as to where Brock's sentence should fall within the guidelines range. Brock does not argue that he should have been sentenced outside the guidelines range.

The district court's explanation of its sentencing decision indicates that the court did take into account Brock's personal characteristics. The district court heard testimony about how Brock's age, military service, and difficult childhood should influence the length of Brock's sentence. *See Dean*, 414 F.3d at 730 ("the defendant must be given an opportunity to draw the judge's attention to any factor listed in section 3553(a) that might warrant a sentence different from the guidelines sentence").

The district court explicitly discussed Brock's age. The court indicated that although it is unfortunate that Brock will be in prison until he is in his 70s, Brock was given a chance already, when he was given early release and shortened parole on a previous conviction for cocaine dealing, and had returned to drug dealing only a few months later. The district court also emphasized the large number of guns and large amount of drugs found in Brock's possession. These facts demonstrated that Brock's drug business was a "danger to the community."

The district court did not explicitly discuss Brock's argument regarding his military service and difficult childhood. However, the district court was not required to do so, under the facts of this case. "[T]he sentencing judge can discuss the application of the statutory factors to the defendant not in checklist fashion but instead in the form of an adequate statement of the judge's reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant." *Dean*, 414 F.3d at 729. "[A]lthough the judge must therefore articulate the factors that determined the sentence that he has decided to impose, his duty 'to consider' the statutory factors is not a duty to make findings . . . . " *Id.* at 729-30. However, "[e]xplicit factfinding *is* required[ ] . . . if, though only if, *contested facts* are material to the judge's sentencing decision." *Id.* at 730 (emphasis added).

In this case, the facts Brock emphasizes are his military service and his difficult childhood. The government did not contest either of these facts, but instead argued that other factors were most important to the district court's sentencing decision. This Court recently decided a similar case, *United States v. Newsom*, 428 F.3d 685 (2005), in which the defendant (Newsom) argued that the district court "failed properly to take his individual circumstances into account" in calculating his sentence for producing, receiving, and

possessing child pornography. *Id.* at 687. In *Newsom*, the "individual circumstances" included Newsom's depression, alcohol abuse, and work history. *Id.* The district court did not discuss these points. *Id.* The Court in *Newsom* reasoned:

> In Newsom's case, we see no indication that there was a contested issue of fact relating to the personal characteristics Newsom has highlighted. It is unfortunate that the court did not mention these points in its order, since Newsom had relied heavily on them on remand, but the court must have thought this unnecessary because the government did not take issue with any of them. It is their significance that was contested. In our view, the only reasonable way to read the court's memorandum is as an indication of which facts the court *did* find material: Newsom's flight, his relationship of trust with and authority over two of his victims, and the seriousness of the offense. The Guidelines, which take those factors into account, normally should point the way toward a reasonable sentence consistent with § 3553(a).

*Id.* at 688.

Similarly, in this case there is no indication from the record that there was a contested issue of fact as to Brock's military service or difficult childhood. Although it would have been helpful if the district court discussed these issues in Brock's sentencing, the district court may have forgone that discussion because the government did not contest Brock's portrayal of the facts. Like in *Newsom*, the most reasonable way to read the district court's sentencing hearing transcript is "as an indication of which facts the court *did* find material:" Brock's possession of a large number of firearms (many loaded); the large amount of drugs in Brock's possession; the danger of Brock's criminal enterprise to his community; and the fact that Brock had been given a reduced sentence in a previous drug conviction and returned to drug dealing soon after his parole ended. The guidelines take such factors into account. *See* 18 U.S.C. § 3553(a)(2) (district court should consider,

among other factors, the need for the sentence imposed "to reflect the seriousness of the offense" and "protect the public").

In contrast to the *Newsom* decision, this Court in *United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005), remanded to the district court for a fuller explanation of its reasoning in imposing a sentence that fell within the guidelines range. In that case, the defendant (Cunningham) plead guilty to conspiring to possess, with intent to distribute, more than five grams of a substance containing crack cocaine (Cunningham acted as a go-between for a coworker and a drug-dealer for a small sum of money). *Id.* at 675. Cunningham's attorney argued at sentencing that even the minimum sentence under the guidelines would be unreasonable, based on his extensively-documented history of psychiatric illness and his minor role in the offense. The district court sentenced Cunningham at the low end of the guidelines range. On appeal, this Court found that the district court had "brushed aside" Cunningham's arguments, leaving the Court in doubt as to whether the district court judge "connected the facts relating to the statutory factors to the sentence he imposed." *Id.* at 676. The Court found two major problems with the sentencing decision: first, the district court stated that Cunningham had "decided not to cooperate against" his coconspirator, even though this finding was not in the record and; second, the district court failed to mention "Cunningham's psychiatric problems and substance abuse, which Cunningham's lawyer wove into a pattern suggestive of entrapment not as a defense but as a mitigating factor not reflected in the guidelines." *Id.* at 677-78.

Unlike in *Cunningham*, in this case the district court's reasoning is supported by the record. The government presented evidence as to the amount of drugs and the number and type of firearms found in Brock's possession, as well as evidence regarding Brock's criminal history. At the

sentencing hearing, Brock argued that the district court should not consider the additional 7.22 kilograms of methamphetamine testified to by Lewis and Dyer. The district court found, however, that although the credibility of Lewis and Dyer might be questioned due to their criminal records, their testimony was corroborated by search warrants. *See United States v. McEntire*, 153 F.3d 424, 436 (7th Cir. 1998) ("Although we have held that a district court is entitled to credit testimony that is 'totally uncorroborated and comes from an admitted liar, convicted felon, large scale drug-dealing, paid government informant,' there must be 'sufficient indicia of reliability.'" (internal citations omitted)).

Additionally, in this case Brock did not argue that his military service and difficult childhood somehow made him less culpable for his drug offenses, like Cunningham did with regard to his mental illness. And Brock's central role in large-scale cocaine and methamphetamine dealing is hardly comparable to Cunningham's relatively minor role as a go-between in a drug transaction between a co-worker and a drug dealer. Brock does not provide any rationale for why his military service and difficult childhood should be mitigating factors, whereas Cunningham offers a connection between his mental illness and his crime. Under the facts of this case, the district court may reasonably have found that Brock's arguments regarding his military service and childhood were "so weak as not to merit discussion." *Cunningham*, 429 F.3d at 679.

Brock's second argument is that his sentence is unreasonable. According to Brock, his sentence is "effectively a life sentence in light of . . . Brock's age," and it fails to give adequate weight to Brock's personal history and characteristics. Brock points out that his father was an alcoholic and died when Brock was twelve years old. Brock served in the U.S. Navy for eight years, and was honorably discharged in 1983. Brock also maintains that the district court gave too

much weight to the amount of drugs involved in his of-
fenses, since that factor was already taken into account by
the guidelines. Additionally, Brock argues that the determi-
nation of the drug quantity relied on testimony of Lewis and
Dyer, who were unreliable witnesses.

As Brock acknowledges, "any sentence that is properly
calculated under the Guidelines is entitled to a rebuttable
presumption of reasonableness." *United States v. Mykytiuk*,
415 F.3d 606, 608 (7th Cir. 2005). Brock does not challenge
the district court's calculation of the guidelines range, and
his sentence lies within the middle of that range. Brock
therefore may rebut the presumption of reasonableness only
"by demonstrating that his . . . sentence is unreasonable
when measured against the factors set forth in § 3553(a)."
*Id.*

Brock is unable to do so. The district court was aware
of Brock's military service and his difficult childhood, but
had good reason to be unmoved by these considerations.
Brock had previously been given a lengthy sentence for
cocaine dealing. He was showed some leniency then,
when his sentence and his parole were reduced, but he went
back to dealing in cocaine and methamphetamine almost as
soon as his probation ended. Brock was in possession of a
large number of guns and a large amount of drugs, and
from these facts the district court reasonably found that
Brock had damaged his community and should not be given
a sentence at the bottom of the guidelines range.

Moreover, we reject Brock's contention that the dis-
trict court gave undue weight to the amount of drugs
involved in his offense. Although the guidelines take
the amount of drugs into account (as the district court
recognizes), this is not a reason that Brock should be
given a sentence at the low end of the guidelines range;
especially not when taken in conjunction with the num-
ber of firearms—many loaded—in Brock's possession and

the resulting danger to the community. Additionally, the district court properly found that Lewis and Dyer's testimony was credible, even though the two had criminal records, because the testimony was corroborated by search warrants. *See McEntire*, 153 F.3d at 436.

Brock's third argument is that this Court should abandon the limited remand approach outlined in *Paladino*, 401 F.3d 471, and instead assume that all *Booker* errors are plain errors that must be remanded to the district court for resentencing. Brock maintains that "the *Paladino* remand is not, in fact, the shortest, easiest, quickest or—most importantly—surest means of determining whether plain error has occurred."

This case does not require us to rethink *Paladino*. As explained above, the record demonstrates that the district court gave meaningful consideration to the § 3553(a) factors, including Brock's personal characteristics and history. Although it is preferable that a district court give a thorough explanation of its consideration of these factors in its order on remand, this is not mandated. Where we feel that a district court's sentencing decision fails to show consideration of the § 3553(a) factors and the parties' arguments, we will remand to the district court for more explanation. *See, e.g.*, *Cunningham*, 429 F.3d 673.

Finally, Brock argues that *Booker* "altered the nature of the evidence defendants will wish to present and emphasize," and "[u]nless the district court has actually been presented with and considered the factors now relevant in the wake of *Booker*, the court will be unable to do more than speculate as to how it would have sentenced a defendant under post-*Booker* jurisprudence."

Once again, the problem Brock points out does not apply in his case. Brock's attorney presented arguments about Brock's personal characteristics and history during the sentencing hearing and it post-remand submissions,

so he cannot say that he had no opportunity to state his position. The district court considered Brock's arguments and provided reasons for imposing the sentence that it did. On remand, the district court decided that its reasoning still applied post-*Booker* and Brock's sentence was still reasonable. We accept this conclusion.

Because the district court would have imposed the same sentence post-*Booker* and because the sentence is reasonable, we conclude that Brock's sentence was not the result of plain error. Additionally, we decline to reconsider the *Paladino* limited remand approach.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

No. 03-2279 15

A true Copy:

   Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*