# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 09-1174 & 09-2457

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID VIZCARRA and ROGELIO AGUIRRE,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 CR 821—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED OCTOBER 1, 2010—DECIDED FEBRUARY 7, 2012

Before POSNER, KANNE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. David Vizcarra and Rogelio Aguirre committed a kidnapping for ransom to extract payment of a drug debt, abducting the victim in Indiana, taking her to Illinois, and holding her for two days before federal agents rescued her. Along with two other coconspirators, they were indicted on conspiracy and kidnapping charges. They pleaded guilty to the kidnapping count, and each appealed. Vizcarra

argues that the district court miscalculated his guide-lines sentencing range by applying a six-level enhancement under U.S.S.G. § 2A4.1(b)(1) for kidnapping demanding a ransom. Applying the enhancement, he contends, was impermissible double counting because the underlying offense involved a ransom demand. He also claims the judge failed to adequately address his arguments in mitigation and that his 168-month sentence is unreasonable in light of those mitigating facts. Aguirre's counsel filed an *Anders* brief seeking permission to withdraw after finding no nonfrivolous issues for appeal.

We affirm Vizcarra's sentence. Applying the enhancement for demanding a ransom does not impermissibly double count. In so holding we resolve an inconsistency in our caselaw regarding the concept of double counting. Despite what we have said or implied—most recently in *United States v. Bell*, 598 F.3d 366, 371-73 (7th Cir. 2010)—there is no general prohibition against double counting in the guidelines. To the contrary, the default rule is that the same conduct may determine the base offense level and also trigger the cumulative application of enhancements and adjustments unless a specific guideline instructs otherwise. *See* U.S.S.G. § 1B1.1 cmt. n.4. In other words, double counting is impermissible only when the text of the applicable guideline specifically says so. We reject Vizcarra's remaining sentencing arguments. Finally, we agree with Aguirre's counsel that there are no nonfrivolous issues for appeal and therefore grant counsel's motion to withdraw and dismiss Aguirre's appeal.

## I. Background

Rogelio Aguirre fronted a significant quantity of marijuana to a woman identified in the briefs as "Victim A." When she failed to pay for the marijuana, Aguirre devised a plot to kidnap and hold her for ransom to pay off the debt. He recruited Antonio Vasquez to help with the kidnapping, and Vasquez, in turn, recruited Jacinto and David Vizcarra (father and son). A fifth unnamed coconspirator arranged to meet Victim A at a tollway plaza in Indiana. Vasquez and the Vizcarras drove to the plaza with the unnamed coconspirator. The coconspirator approached the victim, and David Vizcarra and Vasquez forced her into Jacinto Vizcarra's van. The Vizcarras drove Victim A to Aguirre's apartment in Illinois, and Aguirre told Vasquez to call her family and demand a ransom. Vasquez thereafter made several ransom calls. The kidnappers held Victim A for two days, threatening her and her family. Federal agents eventually rescued her. Aguirre, Vasquez, and the Vizcarras were indicted for conspiracy to commit kidnapping, 18 U.S.C. § 1201(c), and kidnapping, 18 U.S.C. § 1201(a)(1)-(2). Aguirre and David Vizcarra pleaded guilty to the kidnapping charge.

At sentencing Vizcarra objected to the recommendation in the presentence report ("PSR") that a six-level enhancement should be applied under U.S.S.G. § 2A4.1(b)(1) for kidnapping demanding a ransom. He also argued that the PSR's recommendation of criminal-history category II overstated his criminal record. The district court agreed that category II overrepresented

Vizcarra's criminal history, which was limited to two drunk-driving convictions, but rejected his challenge to the ransom enhancement. These rulings resulted in an offense level of 35, a criminal-history category I, and a guidelines range of 168 to 210 months.

Vizcarra argued for a below-guidelines sentence, presenting several arguments in mitigation. He pointed out that he did not plan the kidnapping and he cooperated with police soon after he was arrested. He argued that his participation in the crime was an aberration based on his limited criminal history and other aspects of his background. He also maintained that a lengthy prison term was unnecessary as a specific deterrent; because his criminal record was insignificant—he had spent only one day in jail prior to the kidnapping—a shorter prison term would have a comparatively strong deterrent effect on him. Finally, he argued that his drug and alcohol problems influenced his participation in the crime.

The court imposed a sentence of 168 months, the low end of the guidelines range. Vizcarra appealed, challenging his sentence on procedural and substantive grounds. In particular, he contests the district court's application of the six-level enhancement under § 2A4.1(b)(1) for kidnapping demanding a ransom.

Aguirre's PSR recommended a guidelines range of 235 to 293 months. Aguirre agreed with the guidelines calculation but argued for a below-guidelines sentence based on his age (then 56) and poor health. The judge sentenced Aguirre to 235 months, the low end of the

guidelines range, and Aguirre appealed. His appointed counsel filed an *Anders* brief and moved to withdraw after concluding that there are no nonfrivolous issues for appeal. Aguirre did not initially respond, but we later granted his request to file a late response.

## II. Discussion

### A. David Vizcarra's Appeal

Vizcarra raises three issues on appeal, all relating to his sentence. The main event is an argument about double counting: He contends that applying the six-level enhancement for kidnapping demanding a ransom under § 2A4.1(b)(1) is impermissible double counting because demanding a ransom was an element of his kidnapping conviction. He also argues that the judge ignored several of his arguments in mitigation and that his sentence is substantively unreasonable.

#### 1. *Double Counting*

In the context of guidelines sentencing, the term "double counting" refers to using the same conduct more than once to increase a defendant's guidelines sentencing range. Claims of impermissible double counting come in two varieties. First, conduct that forms the factual basis for an element of the offense might also support a guidelines enhancement or adjustment, meaning that the conduct is counted once as part of the base offense and a second time through the ap-

plication of an enhancement or adjustment. Second, particular conduct might support the application of more than one enhancement or adjustment. Our cases are inconsistent about whether double counting is generally permissible or impermissible. The government asks us to resolve the inconsistency, and we accept the invitation. We hold that double counting is generally permissible unless the text of the guidelines expressly prohibits it. This holding overrules *Bell*, 598 F.3d at 371-73, so we have circulated this opinion to the full court under Circuit Rule 40(e). No judge in active service requested to hear the case en banc.

"Double counting in the sentencing context 'is a phenomenon that is less sinister than the name implies.'" *United States v. Lilly*, 13 F.3d 15, 19 (1st Cir. 1994) (quoting *United States v. Zapata*, 1 F.3d 46, 47 (1st Cir. 1993)). Double counting raises no constitutional concerns. *See United States v. Wheeler*, 330 F.3d 407, 413 (6th Cir. 2003). The concept of double counting is strictly a matter of guidelines interpretation, so normal rules of statutory construction apply. *See United States v. Mitchell*, 353 F.3d 552, 556 (7th Cir. 2003) ("When construing federal sentencing guidelines, we turn to the general rules of statutory construction." (citing *United States v. Lewis*, 93 F.3d 1075, 1080 (2d Cir. 1996))). The starting place is the text of the guidelines. *United States v. Hill*, 645 F.3d 900, 907 (7th Cir. 2011) ("[W]e 'begin with the text of the provision and the plain meaning of the words in the text.'" (quoting *United States v. Arnaout*, 431 F.3d 994, 1001 (7th Cir. 2005))). In addition, "'commentary in the Guidelines Manual that interprets

or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" *United States v. Krumwiede*, 599 F.3d 785, 790 n.8 (7th Cir. 2010) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)).

Section 1B1.1 explains the general principles for applying the guidelines, instructing sentencing courts to apply the guidelines' various rules in order, "except as specifically directed." U.S.S.G. § 1B1.1(a). To arrive at a sentencing range, the judge undertakes several sequential intermediate steps to calculate the applicable range, including selecting the proper offense guideline, determining a base offense level, applying enhancements under Chapter Two and adjustments under Chapter Three, and determining a criminal-history category. *Id.* The defendant's advisory sentencing range is based on the adjusted offense level and criminal-history category. *Id.* All this is familiar and well understood.

A structural feature of guidelines sentencing is that distinct aspects of a defendant's conduct will support respective increases in punishment through multiple sentencing enhancements, adjustments, or other determinations specified in the guidelines. Occasionally, a single aspect of the defendant's conduct will, by itself, supply the factual basis to trigger more than one of the various inputs that combine to yield the advisory guidelines range—the base offense level, sentencing enhancements, and adjustments. This is where the sometimes misunderstood concept of double counting comes in.

Section 1B1.1 and its application note 4 establish the general principle that the various step increases in the guidelines are cumulative. Subsection B of application note 4 explains that cumulative application is the rule *even if* multiple increases are based on the same conduct, *unless* a specific guidelines instructs otherwise:

> 4. (A) <u>Cumulative Application of Multiple Adjustments within One Guideline.</u>—The offense level adjustments from more than one specific offense characteristic within an offense guideline are applied cumulatively (added together) unless the guideline specifies that only the greater (or greatest) is to be used. Within each specific offense characteristic subsection, however, the offense level adjustments are alternative; only the one that best describes the conduct is to be used. For example, in § 2A2.2(b)(3), pertaining to degree of bodily injury, the subdivision that best describes the level of bodily injury is used; the adjustments for different degrees of bodily injury (subdivisions (A)-(E)) are not added together.
>
> (B) <u>Cumulative Application of Multiple Adjustments from Multiple Guidelines.</u>—*Absent an instruction to the contrary*, enhancements under Chapter Two, adjustments under Chapter Three, and determinations under Chapter Four are to be applied cumulatively. *In some cases, such enhancements, adjustments, and determinations may be triggered by the same conduct.*

> For example, shooting a police officer during the commission of a robbery may warrant an injury enhancement under § 2B3.1(b)(3) and an official victim adjustment under § 3A1.2, even though the enhancement and the adjustment both are triggered by the shooting of the officer.

*Id*. § 1B1.1 cmt. n.4(A), (B) (emphasis added). Discrete exceptions to this rule are found elsewhere in the guidelines, each outlining a specific situation under which a particular guidelines provision should not apply in the presence of another. *See, e.g.*, *id*. § 2B1.1 cmt. n.8(C) (prohibiting application of § 3C1.1 obstruction adjustment if based on identical facts as § 2B1.1(b)(10) sophisticated-means enhancement); *id.* § 3C1.1 cmt. n.7 (prohibiting application of § 3C1.1 obstruction adjustment if based on identical facts as underlying obstruction offense). But in the absence of one of these explicit double-counting bars, § 1B1.1 and its application note 4 make it clear that cumulative application—that is, "double counting"—is the default rule.

One line of our cases agrees. *See, e.g.*, *United States v. Nance*, 611 F.3d 409, 413 (7th Cir. 2010) ("Double counting is generally permissible unless the Guidelines say otherwise or there is a compelling basis for implying a prohibition."); *United States v. Harris*, 41 F.3d 1121, 1123 (7th Cir. 1994) (noting the consensus among the circuits that double counting under the guidelines is generally permissible). Another line of cases, however, holds (or implies) that double counting is generally *impermissible*,

even if as a textual matter the guidelines require it. These cases include various "tests" for what constitutes impermissible double counting, and as we have noted, can be grouped into two categories. First, we have said that "[i]mpermissible double counting occurs when the district court imposes 'two or more upward adjustments . . . when both are premised on the same conduct.'" *United States v. Haynes*, 582 F.3d 686, 710 (7th Cir. 2009) (quoting *United States v. Blum*, 534 F.3d 608, 612 (7th Cir. 2008)). We have also said that impermissible double counting occurs "'if the offense itself *necessarily* involves the same conduct as the enhancement.'" *United States v. Beith*, 407 F.3d 881, 889 (7th Cir. 2005) (quoting *United States v. Senn*, 129 F.3d 886, 897 (7th Cir. 1997)).

Our recent decision in *Bell* fits into this second line of cases applying a general rule against double counting. As we will see, however, *Bell* is actually unique. Maurice Bell was convicted of willful failure to pay child support in violation of 18 U.S.C. § 228(a)(3). *Bell*, 598 F.3d at 367-68. An element of this offense is the violation of a court order requiring payment. *See* 18 U.S.C. § 228(f)(3). The sentencing guidelines set the offense level for failure to pay child support by cross-reference to U.S.S.G. § 2B1.1, the guideline for theft, property destruction, and fraud, *see* U.S.S.G. § 2J1.1 cmt. n.2, which includes an enhancement for violating a court order, *see id.* § 2B1.1(b)(9)(C). Thus, *every* conviction for failure to pay child support is subject to an offense-level enhancement for violating a court order. The district court in *Bell* so held and applied the enhancement, but we reversed. We held that punishment for the offender's vio-

lation of a court order is built into the base offense level and therefore applying the enhancement for this same aspect of the defendant's conduct is impermissible double counting. *Bell*, 598 F.3d at 373. We rejected the government's argument that the base offense level and the enhancement punish separate harms: " 'theft' of the child's support and contempt for the judicial system." *Id*. We concluded instead that "there is no reason to believe conduct that *always* inflicts multiple distinct harms may validly receive a punishment enhancement on account of one of the harms." *Id.*

  *Bell* is problematic for more than one reason. First, the opinion does not consistently apply its own concept of impermissible double counting, which it defined as follows: "Impermissible double counting occurs when the same conduct justifies two upward adjustments under the Sentencing Guidelines or the same underlying facts that establish an element of the base offense are used to justify an upward enhancement." *Id.* at 372. *Bell* acknowledged that for some offenses the same conduct will be captured in an element of the offense and also trigger the application of an offense-level enhancement *in every case*. *Id.* We said this overlap does not *necessarily* result in impermissible double counting. *Id*. at 372-73. To illustrate when it does not, we used the example of bank robbery, which is subject to an offense-level enhancement if money is taken from a financial institution. *See* U.S.S.G. § 2B3.1(b)(1). Because taking money from a financial institution is an element of bank robbery, *see* 18 U.S.C. § 2113(a), the financial-institution enhancement applies in *every* bank-robbery case.

Under *Bell*'s own definition of impermissible double counting, however, the financial-institution enhancement could not validly be applied because "the same underlying facts that establish an element of the base offense are used to justify an upward enhancement." *Bell*, 598 F.3d at 372. But our opinion in *Bell* did not suggest that the financial-institution enhancement impermissibly double counts when applied in bank-robbery cases. To the contrary, we emphasized—rightly so—that it does not. *See id.* at 372-73.

Though we did not explain it in *Bell*, this conclusion flows from the text and structure of the guidelines. Because there are more crimes than offense guidelines, the Sentencing Commission has designed the system so that a single offense guideline can account for multiple loosely related but distinct offenses through the use of enhancements. *See, e.g.*, *United States v. Michalek*, 54 F.3d 325, 331 (7th Cir. 1995) (explaining the so-called "dragnet guidelines"). To use the bank-robbery example we invoked in *Bell*, the base offense level in the applicable guideline accounts for the "robbery" part of the crime but not the "bank" part. *See* U.S.S.G. § 2B3.1. The same can be said of failure to pay child support. By cross-reference, the applicable guideline is § 2B1.1, which applies to many varieties of theft, property destruction, and fraud. *See id.* § 2J1.1 cmt. n.2. Cross-references generally incorporate the *entire* offense guideline, including the enhancements. *See id*. § 1B1.5(a). Theft in violation of a court order is different from theft without violating a court order, so applying the § 2B1.1(b)(9)(C) enhancement for violating a court

order—even if the enhancement applies in *every* case of failure to pay child support—does not double count anything. *Bell* should have come out the same way as the bank-robbery example.

Our decision in *Bell* went astray by ignoring the text of the guidelines in favor of a supposed general rule against double counting.[1] To be fair, many of our cases simply recite (or imply) that double counting is generally impermissible, so by reiterating that principle, *Bell* is not unique. But *Bell is* unique in finding a double-counting violation where the text of the applicable guideline permitted—indeed, *required*—application of an enhancement that overlaps with an element of the offense. By our count, 12 of our cases have reversed based on double-counting errors. Five involved an explicit double-counting bar in the text of the guidelines and thus are not controversial. *See United States v. Eubanks*, 593 F.3d 645, 649-50 (7th Cir. 2010) (interpreting U.S.S.G. § 2K2.4 cmt. n.4); *United States v. Podhorn*, 549 F.3d 552, 559 (7th Cir. 2008) (interpreting U.S.S.G. § 2K2.1 cmt. n.9); *United States v. Katalinic*, 510 F.3d 744, 746-48 (7th Cir.

---

[1] We note that U.S.S.G. § 2J1.1, application note 2, was amended effective November 2011 and now explicitly provides that the enhancement in § 2B1.1(b)(9)(C) for violating a court order does *not* apply to failure to pay child support; this amendment was a response to our decision in *United States v. Bell*, 598 F.3d 366 (7th Cir. 2010). *See* U.S.S.G. § 2J1.1 Historical Note. Accordingly, the result in *Bell,* though inconsistent with the text of the guidelines at the time, is now required under the terms of the cross-reference in § 2J1.1.

2007) (interpreting U.S.S.G. § 2K2.4 cmt. n.4); *United States v. Bustamante*, 493 F.3d 879, 889-90 (7th Cir. 2007) (same); *United States v. Bell*, 28 F.3d 615, 618 (7th Cir. 1994) (interpreting U.S.S.G. § 5G1.3(b) & cmt. n.2). In one case the district court inexplicably engrafted a cumulative *statutory* sentence on the wrong guidelines range, an obvious (and apparently inadvertent) error. *See United States v. Powe*, 394 F. App'x 299, 301-02 (7th Cir. 2010). Six cases found the type of error we have been discussing here: a supposed double-counting violation *in the absence of* a textual bar. *See Bell*, 598 F.3d at 373; *United States v. Brummit*, 180 F. App'x 588, 592 (7th Cir. 2006); *United States v. Johnson*, 46 F.3d 636, 639 (7th Cir. 1995); *United States v. Bean*, 18 F.3d 1367, 1370 (7th Cir. 1994); *United States v. Stevenson*, 6 F.3d 1262, 1270 (7th Cir. 1993); *United States v. Kopshever*, 6 F.3d 1218, 1224 (7th Cir. 1993). But four of these six were decided before 1996 (we will return to the significance of this date in a moment) and one—*Brummit*—was a nonprecedential decision in which the government conceded a double-counting error based on a textual prohibition added after the defendant's sentencing. That leaves only *Bell*.

*Bell* relied on circuit precedent to support the proposition that the guidelines generally prohibit double counting, but as we have noted, our prior cases never justified that rule. *Bell* relies primarily on *Haynes*, 582 F.3d at 710, and *United States v. Lallemand*, 989 F.2d 936, 939 (7th Cir. 1993). *See Bell*, 598 F.3d at 372. *Haynes* relies on *Blum*, 534 F.3d at 612, which relies on *United States v. Schmeilski*, 408 F.3d 917, 919 (7th Cir. 2005), which relies

on *United States v. Haines*, 32 F.3d 290, 293 (7th Cir. 1994), which relies on *Kopshever*, 6 F.3d at 1224, which relies, again, on *Lallemand*, 989 F.2d at 939. These cases, collectively, contain no independent reasoning for *why* double counting is generally impermissible under the sentencing guidelines; they simply intone what was said in the last case.[2] Even *Lallemand*—which was not our first double-counting case but is often cited and appears

---

[2] This problem pervades our recent double-counting caselaw, with two exceptions. *United States v. Senn*, 129 F.3d 886, 897 (7th Cir. 1997), employed reasoning similar to *United States v. Stevenson*, 6 F.3d 1262, 1270 (7th Cir. 1993), discussed more in the text. *Senn* read the explicit double-counting bars in the guidelines to imply the existence of a general rule against double counting in comparable factual situations. That conclusion cannot be squared with U.S.S.G. § 1B1.1 and its application note 4. In any case, *Senn* held that the district court did not double count, making its discussion of what *is* impermissible double counting arguably dicta. *United States v. White*, 406 F.3d 827, 833 (7th Cir. 2005), appears to hold that double counting is impermissible based on the following statement in U.S.S.G. § 1B1.1 application note 5: "Where two or more guideline provisions appear equally applicable, but the guidelines authorize the application of only one such provision, use the provision that results in the greater offense level." This instruction plainly applies *only* when the guidelines themselves "authorize the application of only one such provision." It cannot be read to support a general rule that double counting is not permitted. Furthermore, *White* did not even involve a double-counting challenge, so its double-counting discussion is dicta.

to be the primary source of the anti-double-counting principle—simply states without analysis that the guidelines do not permit double counting. As support for this proposition, *Lallemand* cites the Eighth Circuit's decision in *United States v. Lemare*, 980 F.2d 506, 516 (8th Cir. 1992). *Lemare*, in turn, relies on *United States v. Werlinger*, 894 F.2d 1015, 1017-18 (8th Cir. 1990).

There are several reasons to be skeptical of this line of cases. First, although *Lallemand* invokes the Eighth Circuit's decision in *Lemare*—and by implication its predecessor *Werlinger*—as support for the principle that "[t]he guidelines do not authorize double counting," *Lallemand*, 989 F.2d at 939, the Eighth Circuit has distanced itself from that position. *See United States v. Saffeels*, 39 F.3d 833, 837 (8th Cir. 1994) (rejecting the argument that *Werlinger* created a "presumption that double-counting was not intended by the [Sentencing] Commission"). More importantly, *Werlinger*—which in fairness to *Lallemand* (and *Lemare*) *does* appear to apply a presumption against double counting—relied heavily on the Sentencing Commission's silence on the subject. That is, the Eighth Circuit held that in the absence of a statement from the Sentencing Commission expressly *authorizing* double counting, it assumed the Commission did not intend that multiple increases be applied for the same conduct, relying on Supreme Court cases involving *statutory* sentencing enhancements as well as the rule of lenity. *Werlinger,* 894 F.2d at 1017-18 (citing *Busic v. United States*, 446 U.S. 398, 403-04 (1980); *Simpson v. United States*, 435 U.S. 6, 12-13 (1978)). We adopted a

similar rationale in *Stevenson*, 6 F.3d at 1270, noting the lack of explicit authorization of double counting and inferring from the existence of specific double-counting bars a more general prohibition against double counting.

Perhaps the reasoning of these cases made sense at the time. However, the Sentencing Commission amended application note 4 to § 1B1.1 throughout the mid-1990s, casting significant doubt on these early double-counting cases. Application note 4 dates to 1988, at which time its relevant language stated: "The offense level adjustments from more than one specific offense characteristic within an offense guideline are cumulative (added together) unless the guideline specifies that only the greater (or greatest) is to be used." The note was amended in 1993, adding this: "Absent an instruction to the contrary, the adjustments from different guideline sections are applied cumulatively (added together)." The note took its current form in 1996, when the Sentencing Commission clarified that double counting is generally permissible: "*Absent an instruction to the contrary*, enhancements . . . , adjustments . . . , and determinations . . . are to be applied cumulatively. In some cases, such enhancements, adjustments, and determinations may be triggered by the same conduct." (Emphasis added.)

This history of application note 4—progressively clarifying that double counting is the default rule—undermines our continued reliance on pre-1996 double-counting cases. To the extent that *Lallemand*'s statement of a general rule against double counting was reasonable at the time, it is not now and has not been for quite some

time. Rote citation to *Lallemand*—or rote citation to other cases that rely on *Lallemand*—has perpetuated a judicial gloss on the guidelines that cannot be reconciled with their text. Simply put, there is no background rule against double counting in the guidelines. To the contrary, under the general application rules announced and explained in § 1B1.1, the same conduct may determine the base offense level and also trigger cumulative sentencing enhancements and adjustments *unless* the text of the applicable guideline explicitly states otherwise.[3]

With the notable exception of *Bell,* this holding is consistent with the outcomes of our post-1996 cases as well as double-counting cases from other circuits. To be sure, other circuits have developed slightly different "tests" for finding "impermissible" double counting. We have grouped the circuits together according to their general approaches to double counting:

- The Third, Fourth, and Fifth Circuits allow double counting in the absence of an explicit textual bar.[4]

---

[3] It might be argued in individual cases that double counting is unfair. But if the guidelines range is arguably too harsh, the sentencing judge has ample discretion to impose a sentence outside the range. *See United States v. Booker*, 543 U.S. 220, 233 (2005).

[4] *See, e.g., United States v. Fisher*, 502 F.3d 293, 309 (3d Cir. 2007) ("'[O]nly when the Guidelines explicitly prohibit double counting will it be impermissible to raise a defendant's offense level under one provision when another offense Guideline

(continued...)

● The Second, Sixth, and Eighth Circuits allow
double counting if Congress or the Sentencing
Commission intended it,[5] but presume such intent

---

[4] (...continued)
already takes into account the same conduct.'" (quoting *United States v. Wong*, 3 F.3d 667, 670 (3d Cir. 1993))); *United States v. Reevey*, 364 F.3d 151, 158 (4th Cir. 2004) ("Double counting is generally authorized unless the Guidelines expressly prohibit it." (citing *United States v. Crawford*, 18 F.3d 1173, 1179 (4th Cir. 1994))); *United States v. Calbat*, 266 F.3d 358, 364 (5th Cir. 2001) ("[D]ouble-counting is prohibited only if it is specifically forbidden by the particular guideline at issue. . . . The prohibition must be in express language." (citing *United States v. Box*, 50 F.3d 345, 359 (5th Cir. 1995))).

[5] *See, e.g.*, *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 152 (2d Cir. 2008) ("'[A] district court calculating a Guidelines sentence may apply multiple Guidelines provisions based on the same underlying conduct where that is the result clearly intended by Congress and the Sentencing Commission. While such calculations may involve "double counting" in a literal sense, they do not involve *impermissible* double counting.'" (quoting *United States v. Maloney*, 406 F.3d 149, 152 (2d Cir. 2005))); *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010) ("Double counting is allowed 'where it appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct.'" (quoting *United States v. Farrow*, 198 F.3d 179, 194 (6th Cir. 2000))); *United States v. Yarrington*, 634 F.3d 440, 451 (8th Cir. 2011) ("'Even if the court finds double-counting, it is permissible where (1) the Sentencing Commission intended the result and (2) each statutory section concerns conceptually separate notions

(continued...)

in the absence of a textual bar,[6] effectively aligning themselves with the Third, Fourth, and Fifth Circuits.

- The First Circuit allows double counting absent an explicit textual bar or a compelling basis to recognize an implicit one.[7] Because there are *some* explicit double-counting prohibitions in the guidelines, however, the court is openly cautious about "implying further such prohibitions

---

[5]  (...continued)
related to sentencing.'" (quoting *United States v. Myers*, 598 F.3d 474, 476 (8th Cir. 2010))).

[6]  *See, e.g.*, *United States v. Reyes*, 557 F.3d 84, 87 (2d Cir. 2009) ("'Defendant has offered nothing in the . . . Guidelines or relevant statutes reflecting an intent to preclude the double counting the District Court employed, and has therefore not shown any impermissible double counting.'" (quoting *United States v. Morris*, 350 F.3d 32, 37 (2d Cir. 2003))); *United States v. Lewis*, 900 F.2d 877, 881 (6th Cir. 1990) ("The Guidelines should be interpreted as if they were a statute or a court rule, and we will 'follow the clear, unambiguous language if there is no manifestation of a contrary intent.'" (quoting *United States v. Goldbaum*, 879 F.2d 811, 813 (10th Cir. 1989))); *Myers*, 598 F.3d at 477 (deriving legislative intent to allow double counting based on U.S.S.G. § 1B1.1, application note 4, and the lack of an explicit double-counting bar).

[7]  *See, e.g.*, *United States v. McCarty*, 475 F.3d 39, 46 (1st Cir. 2007) (stating that double counting is allowed when "'neither an explicit prohibition against double counting nor a compelling basis for implying such a prohibition exists'" (quoting *United States v. Lilly*, 13 F.3d 15, 20 (1st Cir. 1994))).

where none are written.'" *United States v. Stella*, 591 F.3d 23, 30 n.9 (1st Cir. 2009) (quoting *Lilly*, 13 F.3d at 19).

● The Ninth, Tenth, and Eleventh Circuits allow double counting unless the competing guidelines provisions address identical harms caused by the defendant's conduct.[8] These circuits appear to presume, however, that separate guidelines provisions punish separate harms unless otherwise indicated in the text.[9]

---

[8] *See, e.g., United States v. Gallegos*, 613 F.3d 1211, 1216 (9th Cir. 2010) ("'Impermissible double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.'" (quoting *United States v. Stoterau*, 524 F.3d 988, 1001 (9th Cir. 2008))); *United States v. Coldren*, 359 F.3d 1253, 1256 (10th Cir. 2004) ("[W]e have endorsed the general rule that double counting is ordinarily impermissible when the same conduct is used to support separate increases under separate enhancement provisions which: 1) necessarily overlap, 2) are indistinct, and 3) serve identical purposes."); *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1220 (11th Cir. 2010) ("'Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.'" (quoting *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1309 (11th Cir. 1999))).

[9] *See, e.g., United States v. Rosas*, 615 F.3d 1058, 1065 (9th Cir. 2010) ("We have held that the Sentencing Commission under-

(continued...)

- The D.C. Circuit does not have much meaningful commentary on double counting but appears to presume that double counting is permissible absent a textual bar.[10]

As this survey shows, our colleagues in other circuits generally adhere to the principle that double counting is permissible unless the text of the applicable guideline instructs otherwise. Some circuits do so more or less strictly, but as a practical matter, in nearly every case the result is the same: As long as the district court

_____

(...continued)

stands double counting and 'expressly forbids it where it is not intended.'" (quoting *United States v. Reese*, 2 F.3d 870, 894 (9th Cir. 1993))); *United States v. Groves*, 369 F.3d 1178, 1186 (10th Cir. 2004) ("We are mindful of the general rule that 'the Sentencing Commission plainly understands the concept of double counting, and expressly forbids it where it is not intended.'" (quoting *United States v. Duran*, 127 F.3d 911, 918 (10th Cir. 1997))); *United States v. Dudley*, 463 F.3d 1221, 1227 (11th Cir. 2006) ("We presume that the Sentencing Commission intended separate guidelines sections to apply cumulatively, 'unless specifically directed otherwise.'" (quoting *Matos-Rodriguez*, 188 F.3d at 1310)).

[10] *See United States v. Valdez-Torres*, 108 F.3d 385, 389 (D.C. Cir. 1997) ("The Commission 'plainly understands the concept of double counting, and expressly forbids it where it is not intended.'" (quoting *United States v. Williams*, 954 F.2d 204, 208 (4th Cir. 1992))); *id.* ("In the absence of a caveat that the enhancement does not apply in these circumstances, we would ignore the plain language of the Guidelines were we not to apply the enhancement here.").

applies the guidelines as written, there is no double-counting error.

Returning to Vizcarra's case, applying the ransom enhancement was not impermissible double counting. The guidelines require the application of a six-level enhancement when the kidnapper demanded a ransom, *see* U.S.S.G. § 2A4.1(b)(1), and nothing in the text of this guideline or its application notes suggests that the enhancement does not apply to a defendant in Vizcarra's situation. Accordingly, the district court properly applied the ransom enhancement.[11]

---

[11] Vizcarra's double-counting argument depends on the premise that making a ransom demand is an element of kidnapping, his crime of conviction. As the government notes, however, demanding a ransom is not a necessary element of kidnapping. *See* 18 U.S.C. § 1201(a) (making it a crime to "unlawfully . . . kidnap[] . . . and hold[] for ransom or reward *or otherwise* any person" (emphasis added)); *Gooch v. United States*, 297 U.S. 124, 125-29 (1936) (holding that the kidnapping statute does not require a pecuniary motive). Kidnapping and holding a victim for ransom is one form of the federal kidnapping offense. The government relies on the "or otherwise" clause in the statute to argue that although the facts of this case include a ransom demand, the ransom demand was not required for Vizcarra's conviction. Because we have rejected Vizcarra's double-counting argument based on the text of the guidelines, we need not address this alternative argument.

### 2. *Section 3553(a) Challenges*

Vizcarra next contends that the district court did not adequately address the mitigating facts he raised at sentencing and also that his sentence is unreasonable in light of those facts. The first of these arguments is procedural and the second is substantive. *See United States v. Carter*, 538 F.3d 784, 789 (7th Cir. 2008) ("We review a sentence for procedural error and substantive reasonableness.").

The court is required to consider aggravating and mitigating factors under 18 U.S.C. § 3553(a) before imposing a sentence, and the judge's failure to address a nonroutine argument in mitigation may, if the argument is substantial enough, amount to a procedural error. *See United States v. Scott*, 555 F.3d 605, 608 (7th Cir. 2009). We have also said, however, that "[t]he court need not address every § 3553(a) factor in a checklist fashion, explicitly articulating its conclusions regarding each one." *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008) (citing *United States v. Brock*, 433 F.3d 931, 934-36 (7th Cir. 2006), and *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005)). Instead, "sentencing judges must only demonstrate meaningful consideration of § 3553(a) factors," *United States v. Paige*, 611 F.3d 397, 398 (7th Cir. 2010) (citing *United States v. Laufle*, 433 F.3d 981, 987 (7th Cir. 2006)), and "we regularly affirm sentences where the district judge does not explicitly mention each mitigation argument raised by the defendant," *id.* (citing as examples *Brock*, 433 F.3d at 936, and *United States v. Newsom*, 428 F.3d 685, 687-88 (7th Cir. 2005)).

We review the reasonableness of the sentence for abuse of discretion. *Gall v. United States,* 552 U.S. 38, 51 (2007); *Carter*, 538 F.3d at 789. A sentence within a properly calculated guidelines range is presumed to be reasonable; it is the defendant's burden to overcome the appellate presumption. *See Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008).

Vizcarra focuses on three facts about his background and participation in the crime that he claims the district court either ignored or overlooked: (1) he did not organize the kidnapping; (2) his participation in the kidnapping was aberrational given his insignificant criminal record; and (3) a lengthy prison term is unnecessary as a specific deterrent because he spent only a day in jail prior to the kidnapping. In the alternative, he argues that these mitigating factors make his 168-month sentence substantively unreasonable.

The district court's explanation of Vizcarra's sentence was brief but adequate, enough to demonstrate that the court engaged in "meaningful consideration of § 3553(a) factors." *Paige*, 611 F.3d at 398. The judge explained several times during the sentencing hearing that the guidelines are discretionary and that the § 3553(a) sentencing factors were guiding his discretion. He took note of the parties' sentencing memoranda, defense counsel's arguments in mitigation, and Vizcarra's allocution. The judge reviewed the § 3553(a) factors, with particular emphasis on the seriousness of the offense, which carries a statutory maximum of life imprisonment, as

well as the need for specific and general deterrence. The judge specifically addressed Vizcarra's need to continue his education and vocational training, and also mentioned his treatment needs. Finally, the judge referred generally to Vizcarra's "history and characteristics," saying he had taken those factors into consideration. In imposing the 168-month sentence, the judge recommended a residential drug-treatment program, a sentencing feature Vizcarra specifically requested. Although the court did not address the particular facts Vizcarra emphasizes here, omitting them was not reversible error; defendants routinely downplay their role in the offense and the significance of their criminal history. Viewing the proceedings as a whole, we conclude the district court gave meaningful consideration to the § 3553(a) factors.

Vizcarra argues that even without the procedural defect, his 168-month sentence is substantively unreasonable based on the same three mitigating factors noted above. We disagree. It's true that Vizcarra did not plan the kidnapping, but his role can hardly be characterized as minor. He forcibly abducted the victim, drove her across state lines, and stood watch during her two days of captivity. Nothing about his participation suggests that he specially qualifies for leniency. The second two factors are related and rely largely on inferences that might be drawn from Vizcarra's limited criminal history. But the judge adjusted the guidelines range to account for Vizcarra's insignificant criminal record, dropping him from criminal-history category II to criminal-history category I. The court thus gave some

weight to Vizcarra's argument that his involvement in the kidnapping was aberrational and that a shorter prison term would suffice as a deterrent. In the end, the judge was primarily concerned about the severely aggravated nature of the crime—and justifiably so. The 168-month sentence—at the low end of the advisory range—is presumed reasonable, and Vizcarra has not overcome the presumption.

## B. Rogelio Aguirre's Appeal

Aguirre's appointed counsel filed an *Anders* brief and moved to withdraw after concluding that his appeal presents no nonfrivolous issues. *See Anders v. California*, 386 U.S. 738 (1967). Aguirre did not initially respond, but we allowed him to file a late response.

Counsel first notes that Aguirre did not seek to withdraw his guilty plea in the district court. In his belated response, Aguirre confirms that he does not want to withdraw his plea; counsel therefore properly limited his inquiry to possible sentencing challenges. *See United States v. Knox*, 287 F.3d 667, 670-71 (7th Cir. 2002) (counsel should not explore possible Rule 11 challenges in an *Anders* brief in the absence of a request by the defendant to withdraw his guilty plea). Counsel notes that in his plea agreement, Aguirre accepted the PSR's guidelines calculations and reiterated at sentencing that he had no challenge to those calculations; any challenge to the court's calculation of the advisory range would therefore be frivolous.

Finally, counsel notes that although a below-guidelines sentence would have been reasonable in this case, Aguirre's 235-month sentence—at the low end of the advisory range—is presumptively reasonable and there are no nonfrivolous arguments that might rebut that presumption. Aguirre now claims that he did not make any demands of the victim's family and was not a leader or organizer of this kidnapping, but that conflicts with the facts he admitted when he entered his guilty plea. We agree with Aguirre's counsel that there are no nonfrivolous arguments to pursue on appeal.

For the foregoing reasons, we AFFIRM the judgment in Vizcarra's case (No. 09-1174). In Aguirre's case (No. 09-2457), we GRANT counsel's motion to withdraw and DISMISS the appeal.